NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2013-455

BILL DUNCAN & a.

v.

THE STATE OF NEW HAMPSHIRE & a.

Argued: April 16, 2014
Opinion Issued: August 28, 2014

ACLU Foundation Program on Freedom of Religion and Belief, of Washington, D.C. (Daniel Mach and Heather L. Weaver on the brief), Americans United for Separation of Church and State, of Washington, D.C. (Ayesha N. Khan and Alex J. Luchenitser on the brief, and Mr. Luchenitser orally), and New Hampshire Civil Liberties Union, of Concord (Gilles Bissonnette on the brief), for the petitioners.

Joseph A. Foster, attorney general (Richard W. Head, associate attorney general, and Frank C. Fredericks, attorney, on the brief, and Mr. Head orally), for the State.

Institute for Justice, of Arlington, Virginia (Richard D. Komer and Timothy D. Keller on the brief, and Mr. Komer orally), and Wadleigh, Starr &

Peters, P.L.L.C., of Manchester (Michael J. Tierney on the brief), for the intervenors.

Gregory S. Baylor, of Washington, D.C., Heather Gebelin Hacker, of Folsom, California, and Michael J. Compitello, of Bedford, by brief, for Alliance Defending Freedom, Cornerstone Policy Research, and Liberty Institute, as amici curiae.

Channing M. Cooper, of Washington, D.C., on the joint brief, for American Federation of Teachers, AFL-CIO, and American Federation of Teachers-New Hampshire, as amici curiae.

James F. Allmendinger, of Concord, staff attorney, on the joint brief, for NEA-New Hampshire, as amicus curiae.

Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts (Robert C. Kirsch, Mark C. Fleming, and Eric D. Wolkoff on the brief), for The Anti-Defamation League, as amicus curiae.

Simmons & Ortlieb, PLLC, of Hampton (John Anthony Simmons, Sr. on the brief), and Eric C. Rassbach and Asma T. Uddin, of Washington, D.C., by brief, for The Becket Fund for Religious Liberty, as amicus curiae.

Mosca Law Office, of Manchester (Edward C. Mosca on the brief), and Ilya Shapiro, of Washington, D.C., by brief, for The Cato Institute, Andrew J. Coulson, and Jason M. Bedrick, as amici curiae.

Cravath, Swaine & Moore LLP, of New York, New York (Roger G. Brooks and Benjamin H. Diessel on the brief), and McCandless & Nicholson, P.L.L.C., of Concord (Roy S. McCandless on the brief), for Concord Christian Academy,

Grace Christian School, Concord Christian Academy Giving and Going Alliance, and Roman Catholic Bishop of Manchester, as amici curiae.

Lucy C. Hodder, of Concord, legal counsel to the Governor, by brief, and John M. Greabe, of Hopkinton, by brief, for the Honorable Margaret W. Hassan, as amicus curiae.

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Andru H. Volinsky and Christopher G. Aslin on the joint brief), for New Hampshire School Administrators Association, as amicus curiae.

Barrett M. Christina, of Concord, staff attorney, on the joint brief, for New Hampshire School Boards Association, as amicus curiae.

Joshua P. Thompson, of Sacramento, California, by brief, and William L. O'Brien, of Mont Vernon, by brief, for Pacific Legal Foundation, Greg Hill, Jim Forsythe, William O'Brien, Pamela Tucker, Michael Balboni, Fenton Groen, and Andrew Sanborn, as amici curiae.

DALIANIS, C.J.  This is an appeal and cross-appeal from an order of the Superior Court (Lewis, J.) ruling in favor of the petitioners, eight individual New Hampshire residents and taxpayers and LRS Technology Services, LLC (LRS), on their petition for a declaratory judgment that the Education Tax Credit program (the program), see RSA ch. 77-G (Supp. 2013), violates Part II, Article 83 of the State Constitution.  Defending the program are the State and the intervenors.  The intervenors are three New Hampshire citizens, who wish their children to receive scholarship funds under the program, and the Network for Educational Opportunity, a non-profit organization involved with the program.  The trial court ruled that the petitioners had standing under RSA 491:22, I (Supp. 2013).  We do not reach the merits of the petitioners' declaratory judgment petition because we conclude that:  (1) the 2012 amendment to RSA 491:22, I, which allows taxpayers to establish standing without showing that their personal rights have been impaired or prejudiced, is unconstitutional; and (2) absent that amendment, the petitioners have no standing to bring their constitutional claim.  Accordingly, we vacate and remand with instructions to dismiss the petition.

3

I.  Background

The trial court found, or the record establishes, the following facts.  The legislature enacted the program in June 2012, overriding a gubernatorial veto.  The program creates a tax credit for business organizations and enterprises that contribute to scholarship organizations that have been approved by the New Hampshire Department of Revenue Administration (DRA) to award scholarships to eligible students under the program.  See RSA 77-G:1, VIII, XVII, :2-:5.  For each contribution made to a qualifying scholarship organization, "a business organization or business enterprise may claim a credit equal to 85 percent of the contribution against the business profits tax due . . . or against the business enterprise tax due . . . or apportioned against both [taxes]."  RSA 77-G:3.  The program caps "[t]he aggregate of tax credits" granted to all taxpayers at $3.4 million for the first program year, which began on January 1, 2013, see Laws 2012, 287:5, and at $5.1 million for the second program year.  RSA 77-G:4, I.  An eligible student may receive a scholarship through the program "to attend (1) a nonpublic school . . . or (2) a public school located outside of the [student's] school district," or to defray homeschooling expenses.  RSA 77-G:2, I(a).  In the program's first year, "[t]he average value of all scholarships awarded by a scholarship organization," excluding scholarships to homeschooling students, "shall not exceed $2,500."  RSA 77-G:2, I(b).  In the first year of the program, homeschooled students are eligible to receive scholarships equal to twenty-five percent of $2,500, or $625.  RSA 77-G:1, VI.  The program requires DRA to adjust those amounts annually.  RSA 77-G:2, I(b).  The program requires the State Department of Education to issue "scholarship stabilization grant[s]" to school districts when "the combined amount of reductions in adequacy cost pursuant to RSA 77-G:7 from students receiving scholarships . . . and who were in attendance in that district in the year prior to receiving the scholarships" is "greater than ¼ of one percent of a school district's total voted appropriations for the year prior to the scholarship year."  RSA 77-G:8, I.

The trial court concluded that the program violates Part II, Article 83 of the State Constitution, which provides, in pertinent part, that "no money raised by taxation shall ever be granted or applied for the use of the schools or institutions of any religious sect or denomination."  The court determined that the tax credits constitute "money raised by taxation" because they comprise "[m]oney that would otherwise be flowing to the government."  The court ruled that the tax credits violate the prohibition against applying "money raised by taxation" for use by religious schools because they "inevitably go toward educational expenses at nonpublic 'religious' schools."  After deeming the provisions in RSA chapter 77-G that violate Part II, Article 83 of the State Constitution to be severable from the remaining provisions, the court ordered that "the program may proceed, except that scholarship monies may not go to 'schools or institutions of any religious sect or denomination' within the meaning of . . . Part II, Article 83, and the associated tax credits are likewise

4

disallowed." This appeal by the State and the intervenors and cross-appeal by the petitioners followed.

II.  Analysis

A.  Constitutionality of 2012 Amendment to RSA 491:22, I

We begin by addressing the intervenors' assertion that the 2012 amendment to RSA 491:22, I, pursuant to which the trial court ruled that the petitioners had standing, is unconstitutional.  We review the constitutionality of a statute de novo.  Eby v. State of N.H., 166 N.H. ___, ___ (decided June 13, 2014).  "In reviewing a constitutional challenge to a legislative act, we presume the act to be constitutional and will not declare it invalid except on inescapable grounds; that is, unless a clear and substantial conflict exists between the act and the constitution."  Id. (quotation omitted).  We will not construe a statute "to be unconstitutional when it is susceptible to a construction rendering it constitutional."  Huckins v. McSweeney, 166 N.H. ___, ___, 90 A.3d 1236, 1239 (2014) (quotation omitted).  "When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality."  Id. at ___, 90 A.3d at 1239 (quotation omitted).

Before the 2012 amendment, RSA 491:22, I (2010) provided:

> Any person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive.  The existence of an adequate remedy at law or in equity shall not preclude any person from obtaining such declaratory relief.  However, the provisions of this paragraph shall not affect the burden of proof under RSA 491:22-a or permit awards of costs and attorney's fees under RSA 491:22-b in declaratory judgment actions that are not for the purpose of determining insurance coverage.

As amended in 2012, RSA 491:22, I, provides:

> Any person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive.  The taxpayers of a taxing district in this state shall be deemed to have an equitable right and interest in the preservation of an orderly and lawful government within such district; therefore any taxpayer in the jurisdiction of the taxing district shall have standing to petition for relief under this section when it is alleged

> that the taxing district or any agency or authority thereof has engaged, or proposes to engage, in conduct that is unlawful or unauthorized, and in such a case the taxpayer shall not have to demonstrate that his or her personal rights were impaired or prejudiced. The preceding sentence shall not be deemed to convey standing to any person (a) to challenge a decision of any state court if the person was not a party to the action in which the decision was rendered, or (b) to challenge the decision of any board, commission, agency, or other authority of the state or any municipality, school district, village district, or county if there exists a right to appeal the decision under RSA 541 or any other statute and the person seeking to challenge the decision is not entitled to appeal under the applicable statute. The existence of an adequate remedy at law or in equity shall not preclude any person from obtaining such declaratory relief. However, the provisions of this paragraph shall not affect the burden of proof under RSA 491:22-a or permit awards of costs and attorney's fees under RSA 491:22-b in declaratory judgment actions that are not for the purpose of determining insurance coverage.

Laws, 2012, 262:1 (emphasis added).

The legislature passed the amendment in direct response to our holding in Baer v. New Hampshire Department of Education, 160 N.H. 727 (2010). See N.H.H.R. Jour. 887-88 (2012). In Baer, we recognized that "[o]ur case law contain[ed] two conflicting lines of cases regarding taxpayer standing to bring a declaratory judgment action." Baer, 160 N.H. at 730. Under one line of cases, we had "permitted taxpayers to maintain an equity action seeking redress for the unlawful acts of their public officials, even when the relief sought was not dependent upon showing that the illegal acts of the public officials resulted in a financial loss to the town." Id. In those cases, we reasoned that "every taxpayer has a vital interest in and a right to the preservation of an orderly and lawful government regardless of whether his purse is immediately touched." Id. (quotation omitted). Under the second, more recent line of cases, we had "required taxpayers to demonstrate that their rights are impaired or prejudiced in order to maintain a declaratory judgment action." Id. We ultimately reasoned that the second, more recent, line of cases was more consistent with the language of RSA 491:22 (2010) (amended 2012), and held that to maintain an action under the statute, a party questioning the validity of a law must show that "some right of his is impaired or prejudiced" thereby. Id. (quotation omitted). Specifically, we held "that taxpayer status, without an injury or an impairment of rights, is not sufficient to confer standing to bring a declaratory judgment action under RSA 491:22." Id. at 731.

The intent of the 2012 amendment was to restore taxpayer standing as it had been interpreted in the older line of cases identified in Baer. As one of the

three sponsors of the legislation stated when introducing it:

> This bill restores the long established right of local taxpayers to file for declaratory judgment, which asks a court what the law is when a governmental action is challenged. It is not a suit for money damages. For a century and a half, until a court ruling in 2010, all taxpayers had standing in the state court to seek such relief. As far back as 1863, the New Hampshire Supreme Court found that taxpayers had a legitimate interest in the disposition of their tax dollars and allowed such suits. In Clapp v. Town of Jaffrey, 97 N.H. 456 (1952) the court held, "it is plain that every taxpayer of a town has a vital interest in and a right to the preservation of an orderly and lawful government regardless of whether his purse is immediately touched." This was echoed in 1974 when the Supreme Court also held that "it is well settled in this state that plaintiffs, as taxpayers, have standing to seek redress for the unlawful acts of their public officials." However, two years ago in the case of Baer v. N.H. Department of Education, 160 N.H. 727 (2010) all of these taxpayer standing cases were set aside by the Supreme Court. The court's new interpretation of RSA 491:22 now requires taxpayers to demonstrate an injury or an impairment of rights in order to bring a declaratory judgment action. This bill, as amended by a bipartisan majority, clarifies the law to again permit taxpayer suits to challenge governmental action - returning to taxpayers the same right that they possessed from 1863 until 2010.

N.H.H.R. Jour. 887-88 (2012); see N.H.H.R. Jour. 17 (2012) (listing sponsors of legislation).

The intervenors argue that, by "dispens[ing] with the requirement of any showing of personal injury," the 2012 amendment to RSA 491:22, I, violates: (1) Part II, Article 74 of the State Constitution because the amendment allows this court to render advisory opinions to private individuals; (2) Part I, Article 37 of the State Constitution because the amendment expands the role of the judiciary in such a way as to violate the separation of powers doctrine; and (3) Part II, Article 41 of the State Constitution because that expansion "contravenes the explicit provision granting to the Governor the authority to restrain a violation of any constitutional power by a public official or agency." Accordingly, they argue, the petitioners cannot rely upon the 2012 amendment to RSA 491:22, I, to establish standing.

Because we conclude that the 2012 amendment to RSA 491:22, I, violates Part II, Article 74, we need not decide whether it also contravenes Part I, Article 37, or Part II, Article 41. Although the petitioners urge us not to address the merits of the intervenors' arguments because, they contend, the

intervenors have not sufficiently briefed them, having reviewed the intervenors' opening and reply briefs, we conclude that their standing arguments are sufficiently briefed for our review.  Moreover, even if the intervenors had not sufficiently briefed their standing arguments, because standing is a question of subject matter jurisdiction, we may raise the issue of a party's standing sua sponte.  Eby, 166 N.H. at ___.

We note that the "earlier line of cases" referenced in Baer, 160 N.H. at 730, did not address the precise issue with which we are faced in this case.  In none of those cases did we address the constitutionality of allowing a taxpayer to sue without having to show that any personal right of his is impaired or prejudiced.  Cf. Hagans v. Lavine, 415 U.S. 528, 535 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.").

"When our inquiry requires us to interpret a provision of the constitution, we must look to its purpose and intent."  Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State, 161 N.H. 49, 53 (2010).  "The first resort is the natural significance of the words used by the framers."  Id.  "The simplest and most obvious interpretation of a constitution, if in itself sensible, is most likely to be that meant by the people in its adoption."  Id. (quotation omitted).

Part II, Article 74 provides:  "Each branch of the legislature as well as the governor and council shall have authority to require the opinions of the justices of the supreme court upon important questions of law and upon solemn occasions."  It "empowers the justices of the supreme court to render advisory opinions, outside the context of concrete, fully-developed factual situations and without the benefit of adversary legal presentations, only in carefully circumscribed situations."  Opinion of the Justices (Appointment of Chief Justice), 150 N.H. 355, 356 (2003); see In re School-Law Manual, 63 N.H. 574, 576-77 (1885).  Pursuant to Part II, Article 74, the justices of the supreme court may render advisory opinions only "upon important questions of law and upon solemn occasions," and only to "[e]ach branch of the legislature as well as the governor and council."  N.H. CONST. pt. II, art. 74; see In re School-Law Manual, 63 N.H. at 576-77; Piper v. Meredith, 109 N.H. 328, 330 (1969) ("The bodies authorized to . . . obtain [advisory] opinions are limited by [Part II,] Article 74[ ] to the branches of the Legislature and the Governor and Council.").

Thus, Part II, Article 74 does not authorize this court to render advisory opinions to private individuals.  See Piper, 109 N.H. at 330; Clark v. Clark, 116 N.H. 255, 256 (1976); State v. Harvey, 106 N.H. 446, 448 (1965); cf. Watson v. Fox, 44 A.3d 130, 137 (R.I. 2012) (construing similar provision of Rhode Island Constitution, court states that it has no authority to issue an advisory opinion to a private litigant).  Nor does it empower the court "to issue advisory opinions to either branch of the legislature regarding existing legislation."  Opinion of

the Justices (Appointment of Chief Justice), 150 N.H. at 356. "That authority extends only to proposed legislation." Id. Moreover, under Part II, Article 74, the authority to issue advisory opinions applies solely to the justices of this court, not to the superior court. See Piper, 109 N.H. at 330.

Except as provided in Part II, Article 74, the judicial power in this State is limited to deciding actual, and not hypothetical, cases. See State v. Kelly, 159 N.H. 390, 394 (2009). Generally, "[o]ur constitutional republic confines the judiciary to deciding cases and not serving as a 'super law firm,' no matter how high the stakes or how important the question." Petition of Public Serv. Co. of N.H., 125 N.H. 595, 598 (1984); see Merrill v. Sherburne, 1 N.H. 199, 204, 217 (1818) (determining that it is within judicial power "to decide private disputes 'between or concerning persons,'" and concluding that the "legislature cannot pass . . . a[ ] [judicial] act").

For instance, in Harvey, we declined the defendant's invitation to opine upon the constitutionality of a city ordinance when, after he was convicted but before his appeal, the State nol prossed the complaint alleging that he had violated the ordinance. Harvey, 106 N.H. at 447 (preface to opinion), 448. We determined that the opinion the defendant sought was advisory because "the State now ma[de] no claim of any rights adverse to those asserted by the defendant," and there were no "matters . . . in contention." Id. at 448 (quotation omitted). We concluded that issuing such an advisory opinion to a private individual contravened Part II, Article 74. Id.

In re School-Law Manual is similarly instructive. In that case, the legislature had enacted a statute that appointed a commission to revise, codify, and amend laws related to schools. In re School-Law Manual, 63 N.H. at 575. The statute also authorized the Governor to appoint a commissioner to compile statutes related to schools and "frame rules and forms of proceedings in towns under said statutes." Id. (quotation omitted). The "rules and forms of proceeding" then were to be forwarded to this court for approval and, once approved, would be "deemed valid and sufficient." Id. (quotations omitted). We declined to approve the rules and forms, in part, because doing so would be advisory and an improper exercise of judicial power. See id. at 576-77. We explained that we could not rule upon the validity of the rules and forms "until those questions arise in cases not mooted by the court, but brought by parties into court for trial and judgment." Id. at 575.

In Faulkner v. Keene, 85 N.H. 147, 151 (1931), we opined that a prior version of RSA 491:22 was consistent with Part II, Article 74 because it did not allow the court to issue advisory opinions, but instead empowered the court to "authoritative[ly] determin[e] [the] rights" of "contending parties." The plaintiffs in that case had a contract to sell land in Keene to Standard Oil Company for a gas station. Faulkner, 85 N.H. at 148 (preface to opinion). One condition of the sale was that the plaintiffs obtain approval from the city to store gas,

9

kerosene, and oil on the property. Id. The petition was for a declaration that the plaintiffs (and Standard Oil) had the right to use the property for that purpose. Id. The trial court ruled in the plaintiffs' favor, and the city appealed. Id.

The city argued that the newly enacted Declaratory Judgment Act was unconstitutional. Id. at 149; see Laws 1929, ch. 86. The 1929 version of the act provided: "Any person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title, to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive." Faulkner, 85 N.H. at 149 (quotation omitted). The purpose of the act was "to make disputes as to rights or titles justiciable without proof of a wrong committed by one party against the other." Id. The claim in Faulkner was that the 1929 act was unconstitutional because it allowed the court to render advisory opinions to private individuals. Id. at 150. We ruled that the act was constitutional because it merely allowed courts to resolve disputes between parties at an earlier stage of the proceeding. See id. at 151-52. We explained that the State Constitution "does not prohibit the fixation of rights, as between parties who are in court." Id. at 151. We further reasoned that because the statute "provides that a decree shall settle an issue as between the parties, it cannot well be asserted that rights are not adjudicated upon and conclusively settled by a decree thereunder. The result of such a proceeding is not merely advice, but an authoritative determination of rights." Id.

As these cases illustrate, although the standing requirements under Article III of the Federal Constitution are not binding upon state courts, see ASARCO Inc. v. Kadish, 490 U.S. 605, 617 (1989), and although the State Constitution does not contain a provision similar to Article III, see Wyman v. DeGregory, 101 N.H. 171, 176 (1957), as a practical matter, Part II, Article 74 imposes standing requirements that are similar to those imposed by Article III of the Federal Constitution. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (setting forth the elements of Article III standing). Except as provided in Part II, Article 74 and similar to the "case or controversy" requirement of Article III, standing under the New Hampshire Constitution requires parties to have personal legal or equitable rights that are adverse to one another, see Harvey, 106 N.H. at 448, with regard to an actual, not hypothetical, dispute, see Kelly, 159 N.H. at 394, which is capable of judicial redress, see Faulkner, 85 N.H. at 151; State v. McPhail, 116 N.H. 440, 442 (1976). See Lujan, 504 U.S. at 560-61.

In this way, Part II, Article 74 of the State Constitution, in practical effect, limits the judicial role to one that is "consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." Valley Forge College v. Americans United, 454 U.S. 464, 472 (1982) (quotation omitted) (discussing Article III of

10

the Federal Constitution).  The requirement that parties have personal legal or equitable rights that are capable of being redressed by the court "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Id.; see Opinion of the Justices (Appointment of Chief Justice), 150 N.H. at 356.

The legislature did not comply with Part II, Article 74 by providing that "taxpayers . . . shall be deemed to have an equitable right and interest in the preservation of an orderly and lawful government within [the] district," RSA 491:22, I.  The standing required by our constitution is not satisfied by the abstract interest in ensuring that the State Constitution is observed.  See Valley Forge, 454 U.S. at 482 (discussing Article III standing).  Indeed, the requirement of a concrete, personal injury "has . . . separation-of-powers significance."  Lujan, 504 U.S. at 577; see O'Brien v. N.H. Democratic Party, 166 N.H. ___, ___, 89 A.3d 1202, 1206 (2014) (acknowledging that "[t]he doctrine of standing serves to prevent the judicial process from being used to usurp the powers of the political branches" (quotation omitted)).  When the concrete, personal injury requirement is eliminated, courts "assume a position of authority over the governmental acts of another and co-equal department." Lujan, 504 U.S. at 577 (quotation omitted).  The text of the State Constitution nowhere suggests that the framers intended the judiciary to exercise a role of general superintendence over the whole of the State's government — to function, in effect, as a body akin to the council of revision proposed at the Federal Convention of 1787.  See J. Madison, The Debates in the Federal Convention of 1787 Which Framed the Constitution of the United States of America 25 (Gaillard Hunt & James Brown Scott, eds., int'l ed. 1920) (proposing a "Council of revision," comprised of "the Executive and a convenient number of the National Judiciary," to "examine every act of the National Legislature").  "Vindicating the public interest (including the public interest in Government observance of the Constitution and laws)" is the function of the legislative and executive branches.  Lujan, 504 U.S. at 576; see Merrill, 1 N.H. at 204 ("legislative power" is intended to "regulate publick concerns and to 'make laws' for the benefit and welfare of the state").  "It is the province of judges to determine what is the law upon existing cases" and "to decide private disputes between or concerning persons."  Merrill, 1 N.H. at 204 (quotation omitted); see Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170 (1803) ("The province of the court is, solely, to decide on the rights of individuals.").

The requirement of a concrete personal injury also implicates Part II, Article 41 of the Constitution, pursuant to which the Governor is "responsible for the faithful execution of the laws."  To allow the legislature "to convert the undifferentiated public interest" in the "proper administration of the laws" to "an individual right by a statute that denominates it as such," is to allow the legislature to transfer from the Governor to the courts the executive's "most

11

important constitutional duty," <u>Lujan</u>, 504 U.S. at 576, 577, which is to ensure "the faithful execution of the laws," N.H. CONST. pt. II, art. 41.  Accordingly, pursuant to our State Constitution, "there can be no constitutional cause of action without [a personal] injury, and [the legislature] does not have unlimited power to define injuries."  J. Doggett, <u>"Trickle Down" Constitutional Interpretation:  Should Federal Limits on Legislative Conferral of Standing Be Imported Into State Constitutional Law?</u>, 108 Colum. L. Rev. 839, 847 (2008) (discussing <u>Lujan</u>).

The plain language of the amended statute allows parties to bring claims without having to demonstrate that their "personal rights were impaired or prejudiced."  RSA 491:22, I.  In this way, the statute allows this court to render to private individuals "advisory opinions, outside the context of concrete, fully-developed factual situations."  <u>Opinion of the Justices (Appointment of Chief Justice)</u>, 150 N.H. at 356; <u>see</u> <u>Birch Broad. v. Capitol Broad. Corp.</u>, 161 N.H. 192, 199 (2010) ("The requirement that a party demonstrate harm to maintain a legal challenge rests upon the constitutional principle that the judicial power ordinarily does not include the power to issue advisory opinions." (citation omitted)); <u>cf.</u> <u>Watson</u>, 44 A.3d at 137 (construing provision in Rhode Island Constitution similar to Part II, Article 74, court is "resolute that [it] lacks the constitutional authority" to decide whether legislature had unconstitutionally expended public money because plaintiff was "unable to evince any particularized injury that would remove this case from the realm of pure abstraction," and concluding that the relief the plaintiff sought "is really an advisory opinion cloaked in the garb of a request for declaratory relief").  In doing so, the 2012 amendment to RSA 491:22, I, violates Part II, Article 74.  Although we observe that the United States Supreme Court in <u>Flast v. Cohen</u>, 392 U.S. 83, 102-03 (1968), created a "narrow exception to the general constitutional prohibition against taxpayer standing," <u>Hein v. Freedom from Religion Foundation, Inc.</u>, 551 U.S. 587, 602 (2007) (plurality opinion), we have no occasion to consider whether to recognize a similar exception under the State Constitution or to determine either the parameters of such an exception or its applicability to this case; no party raised the issue in the trial court, and we conclude it would be improper to address it based upon the record before us.

The petitioners mistakenly argue that the legislature has the authority to contravene Part II, Article 74 because Part II, Article 4 of the State Constitution grants it the power to "erect and constitute judicatories and courts of record, or other courts."  "The constitutional authority of the court to give advice," as set forth in Part II, Article 74, "cannot be extended by legislative action."  <u>Harvey v. Harvey</u>, 73 N.H. 106, 107 (1904).

In sum, we hold that RSA 491:22, I, as amended in 2012, contravenes Part II, Article 74 because it confers standing upon taxpayers without requiring

them to demonstrate that any of their "personal rights were impaired or prejudiced." RSA 491:22, I.

B. Petitioners' Standing Under Prior Law

Having concluded that the 2012 amendment to RSA 491:22, I, is unconstitutional, we next address whether the petitioners otherwise have established standing to challenge the constitutionality of RSA chapter 77-G. To establish standing to bring a declaratory judgment proceeding under RSA 491:22, I, before the 2012 amendment thereto, a party must show that some right of the party has been impaired or prejudiced by the application of a rule or statute. Avery v. N.H. Dep't of Educ., 162 N.H. 604, 608 (2011). To meet this requirement, a party seeking declaratory relief must "show that the facts are sufficiently complete, mature, proximate and ripe to place [the party] in gear with [the party's] adversary, and thus to warrant the grant of judicial relief." Delude v. Town of Amherst, 137 N.H. 361, 364 (1993) (quotation omitted). The claims raised must be "definite and concrete touching the legal relations of parties having adverse interests," and must not be based upon a "hypothetical set of facts." Avery, 162 N.H. at 608 (quotations omitted).

The petitioners argue that they have standing "because the Program will harm all the [petitioners] as taxpayers by imposing net fiscal losses on New Hampshire governments and will further harm certain [petitioners] who have children in or teach in the public schools by taking state funding away from the public schools." In assessing whether the petitioners have established standing, we find DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006), and Watson, 44 A.3d 130, instructive. Cuno involved a challenge by Ohio taxpayers to tax benefits awarded by the city of Toledo to DaimlerChrysler Corporation (DaimlerChrysler) in exchange for DaimlerChrysler's agreement to expand its jeep assembly plant already located in the city. Cuno, 547 U.S. at 338-39. The plaintiffs claimed that they were injured by the tax benefits afforded to DaimlerChrysler because the benefits "deplet[ed]" state funds, "diminish[ed] the total funds available for lawful uses and impos[ed] disproportionate burdens" on the plaintiffs. Id. at 343 (quotations omitted). The United States Supreme Court determined that the plaintiffs lacked standing because their claimed injury was not "concrete and particularized," but was instead "a grievance the taxpayer[s] suffer[ed] in some indefinite way in common with people generally," and because the injury was "conjectural and hypothetical." Id. at 344 (quotations omitted). The Court explained that the alleged injury was "conjectural and hypothetical," in part, because "it is unclear that tax breaks of the sort at issue here do in fact deplete the treasury: The very point of the tax benefits is to spur economic activity, which in turn increases government revenues." Id. Further, the Court observed, whether the plaintiffs would suffer an injury "depends on how legislators respond to a reduction in revenue, if that is the consequence of the [benefits]." Id. To establish their injury, "requires speculating that elected officials will increase a

13

taxpayer-plaintiff's tax bill to make up a deficit; establishing redressability requires speculating that abolishing the challenged credit will redound to the benefit of the taxpayer because legislators will pass along the supposed increased revenue in the form of tax reductions." Id. The Court held that "[n]either sort of speculation suffices to support standing." Id.

The plaintiff in Watson was a state legislator who sued in his capacity as an individual taxpayer. Watson, 44 A.3d at 136. He sought a declaratory judgment that the process the legislature used to allocate $2.3 million for legislative grants violated various state constitutional provisions. Id. at 132. The Rhode Island Supreme Court concluded that he lacked standing because he "complained of no concrete, particularized harm; to the degree he can point to any injury, it is the same, indistinguishable, generalized wrong allegedly suffered by the public at large." Id. at 137.

The personal injuries alleged by the petitioners in this case, like those alleged in Cuno and Watson, are insufficient to establish standing. The petitioners' claim that the program will result in "net fiscal losses" to local governments does not articulate a personal injury. It "is the same, indistinguishable, generalized wrong allegedly suffered by the public at large." Id. Although some of the petitioners have school-aged children or are public school teachers, at best, this establishes that those petitioners have a special interest in education. Such a special interest, alone, does not constitute a "definite and concrete" injury sufficient to confer standing. Avery, 162 N.H. at 608 (quotation omitted); see Kadish, 490 U.S. at 616. Moreover, the purported injury asserted here — the loss of money to local school districts — is necessarily speculative. See Cuno, 547 U.S. at 344. Even if the tax credits result in a decrease in the number of students attending local public schools, it is unclear whether, as the petitioners allege, local governments will experience "net fiscal losses." The prospect that this will occur requires speculation about whether a decrease in students will reduce public school costs and about how the legislature will respond to the decrease in students attending public schools, assuming that occurs. See Kadish, 490 U.S. at 614-15.

Elsewhere in their brief, the petitioners argue that they have standing "because this is a fully litigated case challenging a Program that has been implemented." However, to establish that they have standing, the petitioners must show more than that the case has been litigated fully and that the program has been implemented. They must show that some right of theirs has been prejudiced or impaired as a result of the program's implementation. See Avery, 162 N.H. at 608.

To the extent that the petitioners argue that LRS has standing because it "has paid and continues to pay business enterprise taxes or business profits taxes," this, too, is insufficient to show that LRS has suffered a personal injury as a result of the program. There is no evidence that by granting tax credits to

other businesses, the program alters the amount of taxes LRS is or will be required to pay.

Because the petitioners fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, they have failed to establish that they have standing to bring their constitutional claim. "It is evident that the [petitioners] are firmly committed to the constitutional principle of separation of church and State, but standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." Valley Forge, 454 U.S. at 486. "That concrete adverseness which sharpens the presentation of issues is the anticipated consequence of proceedings commenced by one who has been injured in fact; it is not a permissible substitute for the showing of injury itself." Id. (quotation, citation, and brackets omitted).

Although at oral argument, the intervenors contended that only the Governor has standing to challenge RSA chapter 77-G, they also acknowledged that other individuals would have standing if such individuals demonstrated the requisite personal harm. To the extent that the petitioners argue that if they lack standing then no one has standing, we disagree with them that this is a reason to find standing. See id. at 489; Tax Equity Alliance v. Com'r of Revenue, 672 N.E.2d 504, 509 (Mass. 1996) ("[A]n unfounded assumption that, if the individual plaintiffs lack standing, no one will have standing to sue, is not a reason to find standing where none exists."). "This view would convert standing into a requirement that must be observed only when satisfied." Valley Forge, 454 U.S. at 489. "Moreover, we are unwilling to assume that injured parties are nonexistent simply because they have not joined [the petitioners] in their suit." Id. "In light of th[e] overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of an important dispute and to "settle" it for the sake of convenience and efficiency.'" O'Brien, 166 N.H. at ___, 89 A.3d at 1206 (quoting Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013)).

Our decision in this case does not mean that a taxpayer can never have standing to challenge governmental actions. When a taxpayer has a sufficiently personal and concrete interest to confer standing, the taxpayer may seek judicial relief. We hold only that the generalized interest in an efficient and lawful government, upon which the petitioners rely, and the amendment to RSA 491:22 which purports to confer standing, are not sufficient to meet the constitutional requirements necessary for standing to exist.

Vacated and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

15