**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0427, <u>Georgia A. Tuttle, M.D. & a. v. New Hampshire Medical Malpractice Joint Underwriting Association & a.; In The Matter of The Winding Down of the New Hampshire Medical Malpractice Joint Underwriting Association</u>, the court, on March 13, 2018, issued the following order:**

We accepted this interlocutory transfer without ruling pursuant to Supreme Court Rule 9 on August 10, 2017.  The claims in these cases arise in the aftermath of our decision in <u>Tuttle v. New Hampshire Medical Malpractice Joint Underwriting Association</u>, 159 N.H. 627 (2010), in which we held that any excess surplus funds held by the New Hampshire Medical Malpractice Joint Underwriting Association (Association) belonged to the healthcare provider policyholders who had paid the malpractice insurance premiums that generated the surplus, and that the surplus therefore could not be transferred to the State.  The lead plaintiffs, Georgia A. Tuttle, M.D., LRGHealthcare, and Derry Medical Center, thereafter brought suit to compel disbursement of the excess surplus, and the trial court has been involved in ongoing proceedings related both to those claims and to the legislatively mandated winding down of the Association.

The issues presently before the court relate to the proposed disbursement of certain excess surplus funds of the Association.  Pursuant to RSA 404-C:17 (Supp. 2017), Insurance Commissioner Roger A. Sevigny, in his capacity as Receiver of the Association, filed a motion in which he sought to interplead with the court the sum of $50 million to be distributed to policyholders.  The Receiver indicated that, in connection with his duties in winding down the affairs of the Association, he has determined that the $50 million constitutes excess proceeds that can be safely distributed to policyholders, but that he also is maintaining as a reserve $36 million to address the remaining costs and obligations of the receivership.  The lead plaintiffs assented to the Receiver's motion and also filed an unopposed renewed motion for class certification (a class had previously been certified in connection with an earlier distribution to policyholders of approximately $110 million of excess surplus).  The Superior Court (<u>McNamara</u>, J.) denied the motion for class certification without prejudice, and directed the lead plaintiffs to prepare an interlocutory transfer without ruling pursuant to Supreme Court Rule 9, which it approved, certifying the following two questions to this court:

(1) Whether, in the circumstances of this case, it is a sustainable exercise of the Court's discretion to adjudicate the Policyholders' claims as a limited fund class action against the funds the Receiver seeks to tender to the Court in accordance with RSA 404-C:17, III, in a manner akin to Fed. R. Civ. P. 23(b)(1)(B), whether at law, in equity, and/or pursuant to Superior Court Rule 16; and

(2) If yes, whether the court may proceed in substantially the same manner it did in the prior Policyholder Class Action; alternatively, what procedure should be utilized by the Court to ensure fair adjudication of the claims of identified claimants.

(Brackets omitted.)

Before turning to the merits, we first address the plaintiffs' argument that the interlocutory transfer may in actuality be seeking an improper advisory opinion from this court inasmuch as there is no dispute among the parties or members of the putative class as to how the trial court should proceed. Indeed, everyone, including the trial court, appears to be in agreement that the court should employ the limited fund class action procedure utilized by federal courts pursuant to Federal Rule of Civil Procedure 23(b)(1)(B). Because there is not presently any adversity between any parties in interest, and because we are not authorized to issue advisory opinions at the behest of anyone other than the legislature or the Governor and Council, the plaintiffs suggest that we may not have subject matter jurisdiction to answer the questions tendered to us by the trial court. See Duncan v. State, 166 N.H. 630, 640, 645-46 (2014). Although we acknowledge that the procedural posture of this case is unusual, we conclude that the plaintiffs do have standing to pursue this appeal. The trial court's denial of the renewed motion for class certification had the practical effect of precluding the Receiver from making the proposed distribution and, thus, precluding the plaintiffs from receiving their respective shares of the same. This constitutes a sufficiently "concrete and particularized" injury to give the plaintiffs standing to appeal the trial court's ruling. See id. at 646 (quotation omitted).

Turning to the merits, we answer the first certified question in the affirmative. Although we appreciate the trial court's concern that Superior Court Civil Rule 16 does not contain a specific provision analogous to Federal Rule 23(b)(1)(B), we conclude that the superior court has sufficiently broad equitable powers to certify a mandatory class action — that is, one in which no putative member of the class may "opt out" — to resolve claims to the limited fund of $50 million the Receiver desires to implead with the court. See Smith v. Bank, 69 N.H. 254, 257 (1897) (holding that trial court could use "the best inventible procedure" to require that all potential claimants "who, upon proper notice, fail to appear as plaintiffs on or before the time set for trial, or other

2

specified time, shall be forever barred from participating in any of the trust funds or in any damages that may be awarded by reason of the defendants' negligence, and from [thereafter] bringing any action" (quotation omitted)).

We note that the effect of our 2010 Tuttle decision, when combined with the subsequent legislation providing for the wind-down and dissolution of the Association, already establishes the liability of the Association for the return to policyholders of excess surplus funds. Thus, the only matter to be determined by the court is damages; that is, the share of the $50 million to which each policyholder is entitled. In these circumstances, Superior Court Civil Rule 16(h) is applicable. It provides:

> If the court renders judgment in favor of a plaintiff class, the court may, in its discretion, order the defendant to pay damages into the court and require each member of the class to file a claim with the court, or order payment of damages in any other manner it deems appropriate.

Super. Ct. Civ. R. 16(h). We also note that Superior Court Civil Rule 16(d) permits the court to limit class membership to those members who do not request exclusion from the class "[w]hen appropriate." Super. Ct. Civ. R. 16(d). By implication, this rule gives the court discretion to deny the ability to "opt out" in situations, such as that presented here, where the litigation involves a limited fund.

For the reasons stated above, we have no hesitancy in ruling that the trial court has ample authority to employ a procedure analogous to that utilized under Federal Rule of Civil Procedure 23(b)(1)(B) in this case.

The second certified question asks whether the trial court may proceed in substantially the same manner as it did when it made the earlier $110 million disbursement to policyholders, or, if not, what alternative procedures it should use. We answer that the court may use substantially the same procedures it used in connection with the earlier distribution of excess surplus funds. As he did previously, the experienced trial judge has wide discretion to fashion suitable procedures to ensure that appropriate class counsel is appointed, that all putative class members receive adequate notice, and that all claims of class members are fairly adjudicated.

Remanded.

HICKS, LYNN, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,**
**Clerk**

3