NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough  - northern judicial district
No. 2013-043


WILLIAM L. O'BRIEN

v.

NEW HAMPSHIRE DEMOCRATIC PARTY & a.

Submitted: September 19, 2013
Opinion Issued:  March 7, 2014


Mosca Law Office, of Manchester (Edward C. Mosca on the brief), for the plaintiff.

Law Office of Joshua L. Gordon, of Concord (Joshua L. Gordon on the brief), for the defendants.


BASSETT, J.  The plaintiff, William L. O'Brien, appeals an order of the Superior Court (Garfunkel, J.) granting the motion for summary judgment filed by the defendants, the New Hampshire Democratic Party and Raymond C. Buckley, Chairman of the New Hampshire Democratic Party, and denying the plaintiff's motion for summary judgment.  The trial court ruled that the plaintiff, a candidate for re-election to the New Hampshire House of Representatives, and the subject of a prerecorded political message, did not have standing to file an action for damages under RSA 664:14-a (2008), the so-

called "Robocall Statute."  Consequently, the trial court dismissed the action.  We affirm the trial court's ruling.

The following facts are supported by the record or otherwise undisputed.  In 2010, the plaintiff, a member of the Republican Party, ran for re-election in District 4 of Hillsborough County.  District 4 had four seats in the New Hampshire House of Representatives.  The Democratic and Republican parties held primaries in September 2010, which would result in the four candidates from each party who received the most votes being placed on the general election ballot.  Five candidates were running for the Republican nominations, and three candidates were running for the Democratic nominations.  In light of the fact that the Democratic party had fewer candidates than it had spaces on the November ballot, the plaintiff sought "Democratic write-in votes in the September 14, 2010, primary so that he could appear on the ballot in the November cycle for elections as both (R)epublican and (D)emocrat."

The day before the primary, the defendants delivered by telephone a prerecorded political message to 394 households.  The message stated:

> This is State Democratic Chair Ray Buckley calling with the important news that current Republican Bill O'Brien has asked to join the Democratic Party's ticket for the November elections.
>
> If he succeeds tomorrow, we expect Bill O'Brien will embrace the Democratic Party's platform, support President Obama, national health care reform and stand up for gay marriage, and protect a woman's right to choose and our agenda to move New Hampshire and America forward.
>
> Once again, we wanted you to know before you vote tomorrow that Bill O'Brien has asked to join the Democratic ticket and our progressive agenda.  Thank you so much.

The plaintiff received the highest number of votes in the Republican primary, winning a place on the general election ballot as a Republican.  He did not secure enough votes in the Democratic Primary to also appear on the November ballot as a Democrat.  In the general election, the plaintiff won a seat in the House of Representatives.

On September 15, 2010, the plaintiff filed a complaint with the office of the Attorney General, alleging that the defendants violated the Robocall Statute, because they were "responsible for calls containing a prerecorded political message that lacked the statutorily required disclosures."  In August 2011, the Democratic Party entered into a consent agreement with the attorney general "to resolve the State's claims for an alleged violation of the . . . statute,

RSA 664:14-a." The Party paid a $5,000 fine, but did not admit to a violation of the statute.

In September 2011, the plaintiff filed this action alleging that the defendants delivered "false prerecorded political messages" in violation of the Robocall Statute because the "audio message failed to contain" the required disclosures. RSA 664:14-a, II. Specifically, the plaintiff alleged that the message failed to contain either the name of the person or organization paying for the delivery of the message, or the name of the fiscal agent. The plaintiff did not allege that he had sustained an injury as a result of the putative statutory violation. Nor did he allege any quantifiable damages. The plaintiff sought liquidated damages in the amount of $1,182,000, which he calculated by multiplying $1,000 for each of the 394 phone calls, and then trebling it because he alleged that the defendants "willfully or knowingly" violated the statute.

The defendants moved for summary judgment, arguing that the plaintiff lacked standing to bring a private right of action because the Robocall Statute was intended to protect the privacy of voters, rather than the persons mentioned in the message, and because the plaintiff failed to allege a legally cognizable injury. The defendants also maintained that they fully complied with the statutory disclosure requirements. The plaintiff filed a cross-motion for summary judgment, contending that there was no genuine issue of material fact as to whether the statute had been violated, and that, therefore, he, as the subject of the message, was entitled to an award of damages.

The trial court found that the language in the Robocall Statute relating to standing was ambiguous. After examining the legislative history, it concluded that the legislature had enacted the Robocall Statute to "protect the privacy of persons receiving these automated phone calls, not persons mentioned in the phone message." Accordingly, the court dismissed the action, ruling that the plaintiff, as the subject of the message, lacked standing.

On appeal, the plaintiff argues that the trial court erred in dismissing the lawsuit and denying his motion for summary judgment. He contends that the plain language of the statute, which grants standing to "any person injured," is broad and intended to include candidates who are the subject of a prerecorded political message. Alternatively, he claims that, even if the statute is deemed to be ambiguous, the legislative history does not support the trial court's interpretation. He argues that, because the subjects of the prerecorded political messages "typically would have far greater motivation and capacity to bring lawsuits when the statute is violated," the subjects of those messages — as well as the recipients — have standing. Finally, he contends that, because he was the subject of a prerecorded message that violated the statute, he

3

necessarily has standing, and that he is not required by the statute to allege that he sustained an injury caused by the violation.

The defendants counter that they did not violate the statute. They also argue that the trial court correctly interpreted the statute since its purpose is to inform recipients of the origin of the calls, and not to protect against electioneering. Further, they contend that the plaintiff "was injured by neither the robocalls nor their allegedly unattributed nature, and therefore can prove neither standing nor liability."

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Dichiara v. Sanborn Reg'l. Sch. Dist., 165 N.H. ___, ___, 82 A.3d 225, 227 (2013). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. "We review the trial court's application of the law to the facts de novo." Id.

"In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." Libertarian Party of N.H. v. Sec'y of State, 158 N.H. 194, 195 (2008) (quotation omitted). "The requirement that a party demonstrate harm to maintain a legal challenge rests upon the constitutional principle that the judicial power ordinarily does not include the power to issue advisory opinions." Id. at 195-196. Accordingly, the determination of whether the plaintiff has standing to sue under the Robocall Statute "is a matter of statutory construction." In re Campaign for Ratepayers' Rights, 162 N.H. 245, 250 (2011).

The interpretation and application of a statute presents a question of law, which we review de novo. Deyeso v. Cavadi, 165 N.H. 76, 79 (2013). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. LaChance v. U.S. Smokeless Tobacco Co., 156 N.H. 88, 93 (2007). When interpreting statutes, we ascribe the plain and ordinary meanings to the words used. Id. "We interpret statutes to give meaning to every word and phrase." Chase Home for Children v. N.H. Div. for Children, Youth & Families, 162 N.H. 720, 733 (2011). "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." See State v. Lathrop, 164 N.H. 468, 469 (2012).

The Robocall Statute provides that:

No person shall deliver or knowingly cause to be delivered a prerecorded political message unless the message contains, or a

4

live operator provides, within the first 30 seconds of the message, the following information:

      (a) The name of the candidate or of any organization or organizations the person is calling on behalf of.

      (b) The name of the person or organization paying for the delivery of the message and the name of the fiscal agent, if applicable.

RSA 664:14-a, II. A "prerecorded political message" is a "prerecorded audio message delivered by telephone by: (a) A candidate or political committee; or (b) Any person when the content of the message expressly or implicitly advocates the success or defeat of any party, measure, or person at any election, or contains information about any candidate or party." RSA 664:14-a, I. If a court finds for a plaintiff, the Robocall Statute allows the plaintiff to recover "in the amount of actual damages or $1,000, whichever is greater. If the court finds that the act or practice was a willful or knowing violation . . . it shall award as much as 3 times, but not less than 2 times, such amount." RSA 664:14, IV(b).

The Robocall Statute confers standing to file a private action upon a specific cohort of persons: "[a]ny person injured by another's violation of this section may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper." RSA 664:14-a, IV(b) (emphasis added). By its very terms, this provision requires a plaintiff to allege each of the following three elements in order to have standing: (1) a violation of the statute; (2) an injury; and (3) that the violation of the statute caused the injury.

The plaintiff contends that, because the Robocall Statute provides for a minimum of recovery in the amount of $1,000 per violation, a violation of the statute is, in and of itself, sufficient to allow the plaintiff to recover. However, in so arguing, the plaintiff mistakenly conflates damages with injury. The provision establishing statutory damages does not absolve the plaintiff from satisfying the requirement that he allege injury and causation; rather, it relieves him only of the requirement to plead the amount of his damages. The plain language of the statute requires that, in order to have standing, a plaintiff allege both an injury and causation, i.e. that the statutory violation caused him actual injury.

Moreover, a review of the entire statutory scheme relating to elections and political advertising supports this conclusion. "[W]here the legislature uses different language in related statutes, we assume that the legislature intended something different." In re Guardianship of Williams, 159 N.H. 318,

5

323 (2009) (emphasis omitted). "[T]he legislature's choice of language is deemed to be meaningful." State v. Lukas, 164 N.H. 693, 695 (2013) (quotation omitted). Notably, under paragraph IV(a) of the Robocall Statute, the attorney general is authorized to levy a civil penalty of $5,000 for each violation of the statute, without having to demonstrate either injury or causation. See RSA 664:14-a, IV(a) ("A violation of this section shall result in a civil penalty of $5,000 per violation."). Further, RSA 664:18 (2008) provides that "[a]ny candidate or voter may make complaint in writing to the attorney general of any violation of any of the provisions of this chapter." Therefore, given that the legislature established a different scheme for administrative remedies, we assume that the legislature intended that there be an actual difference: that plaintiffs seeking civil relief are required to allege both an injury and causation.

We are not free to ignore the relevant standing distinctions that the legislature has crafted. The doctrine of standing "serves to prevent the judicial process from being used to usurp the powers of the political branches." Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013) (quotation omitted). "In light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of an important dispute and to 'settle' it for the sake of convenience and efficiency." Id. (quotation and brackets omitted). Accordingly, in order to vest the judicial branch with jurisdiction, the plaintiff must allege all three of the elements that the legislature chose to include in paragraph IV(b).

Indeed, we have previously denied a plaintiff standing when the statutory language required a plaintiff to allege an injury and causation, but the plaintiff failed to do so. See generally State v. Hynes, 159 N.H. 187, 196 (2009) (finding that defendant failed "to explain exactly how his threatened [Consumer Protection Act] claim fits within the statutory language conferring private-party standing upon only those 'injured by another's use of any method, act or practice declared unlawful.'"); Appeal of Richards, 134 N.H. 148, 155 (1991) (finding no standing under RSA chapter 541 because "[t]he appealing stockholders have not alleged a direct injury as a result of the PUC's decision approving the rate plan.").

With this legal framework in mind, we turn to the facts of this case. The plaintiff has not alleged that he suffered any injury as a result of the defendants' alleged failure to comply with the disclosure requirements of the statute. The plaintiff won both in the primary, and in the general election. In fact, in his reply brief, the plaintiff conceded that he has not sustained an injury attributable to the purported violation. In response to the defendants' assertion that he had neither sustained nor alleged an injury caused by the purported violation of the statute, the plaintiff candidly acknowledged, "[t]hat is

6

only true if injury is defined as not including being the subject of a robo-call that does not provide the statutorily required disclosures." In essence, the plaintiff argues that he has standing to sue merely because he is the subject of a prerecorded political message that did not include the required disclosures. We reject this argument. The adoption of the construction advanced by the plaintiff would render meaningless the word "injured," and improperly conflate a statutory violation with an injury. This interpretation would contravene the principle of statutory construction that meaning was intended by every word used by the legislature, and that effect must be given to every word and clause. See Chase Home for Children, 162 N.H. at 733.

In support of his motion for summary judgment, the plaintiff submitted the affidavit of a voter, Sandra Kent, who stated that she received the prerecorded message, and was "confused about the legitimacy of the message." Kent did not recall the substance of the phone call; however, she was confused because the prerecorded political message "said that [the plaintiff] would be running on the Democrat[ic] ticket." She stated that, "The message seemed to make claims about [the plaintiff] that did not make sense to me based on what I know about him." The plaintiff argued that the Kent affidavit alleged a sufficient injury to give the plaintiff standing.

However, Kent's confusion flowed from the political content of the message, rather than from the alleged absence of the required disclosure. Kent stated that she was confused because she did not understand why the message said that the plaintiff, a Republican, was requesting to be on the Democratic ticket. Because the prerecorded political message stated that it was from "State Democratic Chair Ray Buckley," the message would have produced the same confusion even if the message had included the "missing" information that the plaintiff contends that it should have included, i.e. the name of the person or entity paying for the delivery of the message, and the fiscal agent. The additional information would not have clarified whether the plaintiff actually wanted to join the Democratic Party, nor whether he had asked the Democrats to deliver the message. Kent's confusion would have persisted. Indeed, we note that voter confusion attributable to the political content of robocalls or political advertising is not uncommon. See Lieffring, Note, First Amendment and the Right to Lie: Regulating Knowingly False Campaign Speech After United States v. Alvarez, 97 Minn. L. Rev. 1047, 1064 (2013) (citing a recent study where more than nine in ten voters said they frequently encountered some misleading information in campaign speech). Moreover, even if we were to assume that Kent's confusion is a cognizable injury within the meaning of the Robocall Statute, it is an injury sustained by Kent, not by the plaintiff. Therefore, we hold that, having failed to allege that he sustained an injury caused by a statutory violation, the plaintiff does not have standing.

7

Because we hold that the plaintiff did not allege an injury flowing from the alleged statutory violation, and therefore, that he does not have standing, we need not decide whether the trial court was correct when it held that a candidate, as the subject of a prerecorded message — not the recipient of a robocall — cannot be "a person injured" within the meaning of the statute. We observe, however, that the differing interpretations of the statute advanced by the parties, as well as the ruling of the trial court, suggest that whether a candidate has standing to file a private action under the Robocall Statute is, arguably, unclear. Accordingly, we invite the legislature to clarify whether candidates, or any other persons or entities that are the subject of prerecorded political messages — in addition to the recipients of the phone calls — have standing to bring a private right of action under the Robocall Statute.

Finally, we note that a candidate who is the subject of a robocall that does not comply with statutory disclosure requirements — yet who does not allege an injury resulting from the violation — is not without recourse. The Robocall Statute specifically provides that a candidate who believes that there has been a violation of the statute may file a complaint in writing with the attorney general. See RSA 664:14-a, IV(a). Indeed, that is exactly what the plaintiff did in this case.

Affirmed.

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.