NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

―――――――――――――――

Merrimack
No. 2016-0199


THE STATE OF NEW HAMPSHIRE

v.

ACTAVIS PHARMA, INC. & a.

Argued: March 1, 2017
Opinion Issued: June 30, 2017


Joseph A. Foster, attorney general (Lisa M. English, senior assistant attorney general, and Francis C. Fredericks, assistant attorney general, on the brief, and Ms. English orally), for the State.


Preti Flaherty, PLLP, of Concord (Brian M. Quirk on the joint brief), for defendant Actavis Pharma, Inc.


McLane Middleton, Professional Association, of Manchester (Wilbur A. Glahn, III and Michael A. Delaney on the joint brief, and Mr. Glahn orally), for defendant Endo Pharmaceuticals, Inc.

Boutin & Altieri, P.L.L.C., of Londonderry (Edmund J. Boutin on the joint brief), for defendant Janssen Pharmaceuticals, Inc.

Nixon Peabody LLP, of Manchester (David A. Vicinanzo, Gordon J. MacDonald, Holly J. Barcroft, and Anthony J. Galdieri on the joint brief), for defendant Purdue Pharma L.P.

Hinckley Allen, of Concord (Michael J. Connolly and Christopher H.M. Carter on the joint brief), for defendant Teva Pharmaceuticals USA, Inc.

DALIANIS, C.J.  The State appeals, and the defendants, Actavis Pharma, Inc., Endo Pharmaceuticals, Inc., Janssen Pharmaceuticals, Inc., Purdue Pharma L.P., and Teva Pharmaceuticals USA, Inc., cross-appeal, an order of the Superior Court (Nicolosi, J.) denying the State's motion to enforce administrative subpoenas issued to the defendants under the Consumer Protection Act (CPA), RSA chapter 358-A (2009 & Supp. 2016), and granting the defendants' motion for a protective order.  We reverse and remand.

I

The relevant facts follow.  In June 2015, the Office of the Attorney General (OAG) retained the law firm of Cohen Milstein Sellers & Toll PLLC (Cohen Milstein) on a contingency fee basis "to represent [the OAG] in an investigation and litigation of potential claims regarding fraudulent marketing of opioid drugs." (Emphasis added.)  In September, the OAG and Cohen Milstein entered into a second retainer agreement that "supersedes the initial retainer agreement, executed June 15, 2015, and is effective as of that date." The September retainer agreement states that Cohen Milstein is retained "to assist [the OAG] in an investigation and litigation of potential claims regarding fraudulent marketing of opioid drugs." (Emphasis added.)

In August 2015, pursuant to RSA 358-A:8 (2009), the OAG subpoenaed the defendants, with return dates of September 15, "to produce for examination by the Attorney General" specified "information and documentary material because the Attorney General has reason to believe that [the defendants] have engaged in or have information about unfair trade practices and methods of competition."  The subpoenas seek documents and information related to each defendant's opioid sales volume in New Hampshire, the nature and scope of each defendant's plans and efforts to market opioids for chronic pain, the nature of and basis for representations made to prescribers and consumers about the use of opioids for chronic pain, and each defendant's role in causing

2

health care providers to prescribe opioids to treat chronic pain. Although the defendants initially stated that they intended to comply with the subpoenas, they subsequently refused to do so, citing their objection to the OAG's retention of Cohen Milstein to assist in the investigation on a contingency fee basis.

In October, the State moved to enforce the administrative subpoenas. The defendants answered the State's complaint and counterclaimed that the OAG's engagement of outside counsel is unlawful. In addition, the defendants moved for a protective order, seeking to "bar the Attorney General from engaging contingent fee counsel to: (a) participate in or assume responsibility for any aspect of the State's investigation of alleged violations of the CPA . . . ; or (b) participate in or assume responsibility for any subsequent enforcement action pertaining to alleged CPA violations." The defendants argued that the OAG's fee agreements with Cohen Milstein: (1) violate RSA 21-G:22 and :23 (2012) (amended 2016); (2) violate New Hampshire common law; (3) are ultra vires because the OAG did not comply with RSA 7:12 (2013) (amended 2016) or :6-f (Supp. 2016); (4) violate the doctrine of separation of powers; (5) violate the New Hampshire Rules of Professional Conduct; and (6) violate due process under the New Hampshire and United States Constitutions. The State replied, asserting that "an objection to the Attorney General's use of outside counsel is not an appropriate justification for refusing to comply with lawful subpoenas" and that the defendants "lack standing to raise that complaint at all in this proceeding."

Following a hearing, the trial court denied the State's motion to enforce the subpoenas and granted the defendants' motion for a protective order "to the extent that the OAG and Cohen Milstein's contingency fee agreement is invalid." The trial court determined that the defendants had demonstrated standing to bring their claims. Construing RSA 7:12 and :6-f, the court concluded that "in executing the contingency fee agreement without the approval of joint legislative fiscal committee and the governor and council, . . . the OAG acted outside the scope of its statutory authority to hire and compensate outside counsel," and, therefore, "the contingency fee agreement between the OAG and Cohen Milstein is ultra vires and void."

The trial court rejected the defendants' ethics violations arguments, finding that because Cohen Milstein is not a "public employee" under the Executive Branch Code of Ethics (Ethics Code), see RSA 21-G:21-:27 (2012) (amended 2016), or a "public attorney" under the common law or the New Hampshire Rules of Professional Conduct, the contingency fee arrangement "does not create a conflict of interest." The court also rejected the defendants' claim that the contingency fee arrangement violates their due process rights, agreeing with "the greater weight of judicial precedent finding no violation of due process by contingency fee arrangements in certain civil litigation where the OAG supervises outside counsel and retains control over all critical

3

decisions such that the outside counsel's personal interest is neutralized." This appeal followed.

II

The State appeals the trial court's finding that the defendants have standing "to make an <u>ultra vires</u> challenge to a government contract that they are not a party to and that is predicated upon the [OAG's] alleged failure to follow claimed state contract formalities." The State asserts that the defendants "failed to make the requisite showing of 'actual harm.'" Further, the State argues that, "even if speculative risk did amount to a cognizable harm, the [defendants] have failed to show the alleged risk of future harm is in any way linked to the challenged conduct—namely the OAG's decision to enter into a contingency fee agreement without seeking approval from the fiscal committee or the [Governor and Council]."

The defendants counter that the trial court "did not find standing based on any 'hypothetical' or 'future' harm," but correctly found that "the contingency-fee agreement <u>presently</u> taints the investigation in a manner adverse" to them, "because the State's investigation of [them] is inherently biased by Cohen Milstein's conflict of interest." (Quotations omitted.) In addition, the defendants argue that the trial court "properly found that this injury is personal to [them] because they are the direct targets of subpoenas issued in an investigation that . . . exceeds an executive agency's authority." (Quotations omitted.)

When the relevant facts are not in dispute, we review <u>de novo</u> the trial court's determination on standing. <u>Lynch v. Town of Pelham</u>, 167 N.H. 14, 20 (2014). "[S]tanding under the New Hampshire Constitution requires parties to have personal legal or equitable rights that are adverse to one another, with regard to an actual, not hypothetical, dispute, which is capable of judicial redress." <u>Duncan v. State</u>, 166 N.H. 630, 642-43 (2014) (citations omitted). "In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." <u>O'Brien v. NH Democratic Party</u>, 166 N.H. 138, 142 (2014) (quotation omitted). Neither an "abstract interest in ensuring that the State Constitution is observed" nor an injury indistinguishable from a "generalized wrong allegedly suffered by the public at large" is sufficient to constitute a personal, concrete interest. <u>Duncan</u>, 166 N.H. at 643, 646 (quotation omitted). Rather, the party must show that its "own rights have been or will be directly affected." <u>Eby v. State</u>, 166 N.H. 321, 334 (2014) (quotation omitted).

"The requirement that a party demonstrate harm to maintain a legal challenge rests upon the constitutional principle that the judicial power ordinarily does not include the power to issue advisory opinions." <u>Birch Broad. v. Capitol Broad. Corp.</u>, 161 N.H. 192, 199 (2010). "The doctrine of standing

4

serves to prevent the judicial process from being used to usurp the powers of the political branches." O'Brien, 166 N.H. at 144 (quotation omitted). "In light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of an important dispute and to 'settle' it for the sake of convenience and efficiency." Id. (quotation omitted).

As a threshold matter, the defendants argue that standing principles do not apply to them because "standing applies only to a plaintiff's ability to initiate a lawsuit, not a defendant's right to resist the claims against it." According to the defendants, by bringing its action to enforce administrative subpoenas, "the State affirmatively put at issue the propriety of its contingency-fee agreement with Cohen Milstein," and the defendants "seek only to defend themselves in a proceeding initiated by the State as part of an ongoing State investigation." We disagree. Contrary to their representations otherwise, the defendants are themselves seeking affirmative judicial relief unrelated to the adequacy of the subpoenas that were issued pursuant to the attorney general's statutory authority. The defendants counterclaimed against the State, seeking a protective order that "the Attorney General's engagement of outside counsel to conduct the Bureau's investigation on a contingency fee basis is void and unlawful and that such outside counsel is prohibited from any participation in this investigation or any subsequent lawsuit arising from that investigation." In doing so, the defendants raised several claims, including that the contingency fee agreement is ultra vires.

Under these circumstances, the defendants must establish standing to raise their claims. See, e.g., Federal Deposit Ins. Corp. v. Main Hurdman, 655 F. Supp. 259, 268-69 (E.D. Cal. 1987) (reasoning that, in a case in which the defendant raised, as an affirmative defense, a claim that the Federal Deposit Insurance Company's actions were ultra vires, "[t]here appears to be no reason in logic not to require a defendant who seeks to litigate the lawfulness of the government's conduct in such a context to demonstrate its right to obtain judicial determination of its contention" and concluding that because "defendant raises a true affirmative defense seeking to litigate questions not encompassed by plaintiff's case-in-chief," defendant needed to show standing to raise its claim); United States v. Neset, 10 F. Supp. 2d 1113, 1116 (D.N.D. 1998) (explaining that "[i]n raising an affirmative defense, a defendant is seeking the jurisdiction of the court to hear its claims as much as a plaintiff and, therefore, standing becomes an issue for the defendant as well"), aff'd on other grounds, 235 F.3d 415 (8th Cir. 2000).

We conclude that the defendants have failed to demonstrate standing with respect to their claims that the contingency fee agreement between the OAG and Cohen Milstein is ultra vires under RSA 7:12, I, and :6-f. Thus, we hold that the trial court's contrary determination is erroneous.

RSA 7:12, I, provides that "[w]ith the approval of the joint legislative fiscal committee and the governor and council, the attorney general may employ counsel, . . . and may pay them reasonable compensation . . . out of any money in the treasury not otherwise appropriated." The defendants contend that the trial court correctly determined that they are injured "because the State's investigation of [them] is inherently biased by Cohen Milstein's conflict of interest." (Quotation omitted.) However, the bias claimed has nothing to do with the alleged violation of the statute. The defendants concede that, even if the contingency fee agreement had been ratified by the joint legislative fiscal committee and the Governor and Council, their injury would not be alleviated. Because the alleged injury — an investigation allegedly inherently biased by Cohen Milstein's participation — cannot fairly be traced to the challenged violation — the State's failure to obtain legislative and executive approval before retaining outside counsel on a contingency fee basis — the defendants have not established "an actual, not hypothetical, dispute which is capable of judicial redress." Duncan, 166 N.H. at 642-43 (citation omitted); see O'Brien, 166 N.H. at 144-45 (concluding that when plaintiff conceded that he had not sustained an injury attributable to the purported statutory violation, plaintiff failed to establish standing).

We, likewise, conclude that the defendants lack standing, at this time, to challenge the contingency fee agreement based upon RSA 7:6-f. RSA 7:6-f provides in part that "[a]ny funds received by the attorney general on behalf of the state or its citizens as a result of any . . . action under [the CPA] . . . shall be deposited in a consumer protection escrow account." The defendants assert that this provision prohibits the OAG from retaining Cohen Milstein on a contingency fee basis "regardless of any approvals the [OAG] seeks." However, as the State argues, RSA 7:6-f "only comes into play—if at all—after a CPA settlement or judgment." Further, as the State contends, there may never be one in this case. We agree. Any alleged violation of the statute is neither actual nor imminent. See Duncan, 166 N.H. at 642; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

III

The defendants cross-appeal the trial court's finding that the fee agreement between the OAG and Cohen Milstein does not violate the Ethics Code. Following oral argument, we requested the parties to address whether the Ethics Code provides a private right of action. After considering the parties' memoranda, we conclude that it does not.

The determination of whether the defendants have standing to sue under the Ethics Code "is a matter of statutory construction." O'Brien, 166 N.H. at 142 (quotation omitted). The interpretation and application of a statute presents a question of law, which we review de novo. Id. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as

expressed in the words of the statute considered as a whole. <u>Id</u>. When interpreting statutes, we ascribe the plain and ordinary meanings to the words used. <u>Id</u>. Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme. <u>Id</u>.

The Ethics Code provides that "[e]xecutive branch officials shall avoid conflicts of interest" and "shall not participate in any matter in which they . . . have a private interest which may directly or indirectly affect or influence the performance of their duties." RSA 21-G:22. In addition, "[n]o executive branch official shall . . . [d]isclose or use confidential or privileged information acquired in the performance of his or her duties for the state for personal benefit or for financial gain." RSA 21-G:23, I. An "executive branch official" includes a "[p]ublic employee" defined as "any person, including but not limited to a classified or non-classified employee or volunteer, who conducts state business on behalf of the governor, any executive branch official, agency, or the general court." RSA 15-B:2, IX (2012) (amended 2016).

The Ethics Code establishes an executive branch ethics committee "to resolve . . . issues, questions, or complaints involving executive branch officials who are not classified employees." RSA 21-G:29, I (2012) (amended 2016). The committee is authorized to "issue interpretive rulings explaining and clarifying any law . . . within the jurisdiction of the committee." RSA 21-G:30, I(b) (2012) (amended 2016). The jurisdiction of the committee "shall consist of matters arising under the executive branch code of ethics, RSA 21-G:21-27." RSA 21-G:29, II (Supp. 2015) (amended 2016). The committee is also authorized to "[r]eceive sworn complaints, investigate allegations of violations of this subdivision . . . by executive branch officials and make appropriate findings of fact and conclusions with respect to such conduct." RSA 21-G:30, I(d) (2012) (amended 2016).

There is nothing in the Ethics Code to support a conclusion that the legislature intended to create a private right of action for its violation. Accordingly, we hold that the defendants do not have standing to bring claims under the Ethics Code. <u>See</u> <u>Berry v. Watchtower Bible & Tract Soc.</u>, 152 N.H. 407, 411 (2005) (explaining that child abuse reporting statute does not give rise to a civil remedy for its violation); <u>Cross v. Brown</u>, 148 N.H. 485, 487 (2002) (concluding that the Right to Privacy Act does not create a private right of action to seek a declaration that the statute has been violated).

The defendants also argue that "the contingency-fee agreement violates longstanding New Hampshire common law and ethics . . . rules." (Capitalization and bolding omitted.) They assert that "[w]hen a private lawyer represents the State in a matter in which the lawyer has a personal interest, that interest compromises the 'impartiality' required of all government lawyers and creates at least the appearance of impropriety." The trial court found that

7

"Cohen Milstein is not a public attorney under common law or the Rules of Professional Conduct" and rejected the defendants' claims to the contrary because they are "based on the premise that Cohen Milstein is vested with a governmental function and in a position of public trust where its financial stake will create a conflict of interest that will negatively impact the public trust and the fair administration of the law."

Under the plain terms of the agreement between the OAG and Cohen Milstein, the OAG retains direct authority over all aspects of the investigation. The September agreement provides that the OAG "will maintain control of the investigation and . . . make all key decisions, including whether and how to proceed with litigation, which claims to advance and what relief to seek." The agreement further provides that Cohen Milstein must "provide regular reports to [the] OAG on the investigation, including summaries of documents and interviews," that the OAG "will review and approve all key documents," and "will designate a point of contact who will supervise the investigation." When the investigation has been completed, the OAG "will determine, in its sole discretion, whether to move forward to litigation." Given these plain terms, we hold that the trial court did not err in concluding that "Cohen Milstein . . . has no authority to make any key administration decisions and therefore lacks the ability to represent the State as a substitute for the OAG."

IV

Finally, the defendants cross-appeal the trial court's finding that because the contingency fee agreement provides for the OAG to retain ultimate control over the investigation, the agreement does not violate due process. They argue that the United States Supreme Court "has categorically barred any arrangement that could undermine a government lawyer's duty to pursue justice over personal interest." In support, the defendants rely upon Young v. United States ex rel. Vuitton et Fils S. A., 481 U.S. 787 (1987), and Marshall v. Jerrico, Inc., 446 U.S. 238 (1980). These cases, however, are not pertinent to the issues before us. See Young, 481 U.S. at 804 (explaining that in a criminal case, "a private attorney appointed to prosecute a criminal contempt . . . should be as disinterested as a public prosecutor who undertakes such a prosecution"); Marshall, 446 U.S. at 239, 248-49 (in rejecting the contention that the penalties provision in the Fair Labor Standards Act violated due process "by creating an impermissible risk of bias in the Act's enforcement and administration," the Court held that the "rigid requirements of [neutrality], designed for officials performing judicial or quasi-judicial functions, are not applicable to those acting in a prosecutorial or plaintiff-like capacity").

As the appealing parties with respect to this issue, the defendants have the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's order, the defendants' challenges to it, the relevant law, and the record submitted on appeal, we

conclude that the defendants have not demonstrated reversible error as to this issue.

Reversed and remanded.

HICKS, CONBOY, and LYNN, JJ., concurred.