NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2017-0548

CONDUENT STATE & LOCAL SOLUTIONS, INC.

v.

NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION & a.

Argued: May 9, 2018
Opinion Issued: October 16, 2018

Cleveland, Waters and Bass, P.A., of Concord (Bryan K. Gould, Philip R. Braley, and Cooley A. Arroyo on the brief, and Mr. Gould orally), for the plaintiff.

Gordon J. MacDonald, attorney general (Jessica King, attorney, on the brief and orally), for defendant New Hampshire Department of Transportation.

Hinckley, Allen & Snyder, LLP, of Manchester (Daniel M. Deschenes and Cori P. Palmer on the brief, and Mr. Deschenes orally), for defendant Cubic Transportation Systems, Inc.

HICKS, J. The plaintiff, Conduent State & Local Solutions, Inc. (Conduent), appeals an order of the Superior Court (Nicolosi, J.) denying

Conduent's request for a declaration that defendant New Hampshire Department of Transportation (DOT) exceeded its statutory authority, and, therefore, violated the separation of powers doctrine, by procuring from defendant Cubic Transportation Systems, Inc. (Cubic) a new system to support DOT's electronic collection of tolls, using the "best value" method for evaluating competing bids. See N.H. CONST. pt. I, art. 37. On appeal, Conduent argues that DOT had no statutory authority to procure the new system because procurement authority is given to the New Hampshire Department of Administrative Services (DAS). See RSA ch. 21-I (2012 & Supp. 2017). Alternatively, Conduent asserts, even if DOT had statutory authority to procure the new system, it lacked authority to use the "best value" method for evaluating competing bids. We affirm.

The relevant facts follow. DOT collects tolls electronically through the "E-ZPass" system, which allows a vehicle with a transponder to pass through toll lanes without stopping. DOT maintains accounts for all E-ZPass users and, when a vehicle with a transponder passes through a tollbooth, a toll is charged to the account associated with the detected transponder.

The E-ZPass system requires a variety of so-called "back office" activities, such as developing and maintaining software, managing E-ZPass accounts, distributing E-ZPass transponders, interacting with credit card companies, identifying and enforcing E-ZPass violations, coordinating with electronic toll collection systems in other states, staffing E-ZPass service centers, and developing and maintaining the E-ZPass website.

Conduent has had a contract with DOT to provide these services since 2004.[1] In December 2014, DOT issued a request for proposal (RFP) soliciting bids for "a new back office system and related operations to support electronic tolling, video tolling, violation processing and E-ZPass . . . reciprocity." The RFP required bidders to submit a technical proposal and a price proposal. The RFP reserved to DOT the "sole discretion" to "reject any and all Proposals at any time."

The RFP informed prospective bidders that each proposal would be evaluated with regard to the services proposed, the qualifications of the contractor and any subcontractor, the experience and qualifications of "proposed candidates," and cost. The RFP informed prospective bidders that the bids would be evaluated on a 100-point scale with 70 points allocated to the technical proposal and 30 points allocated to the price proposal. The RFP identified the weights to be applied to the different components of the technical

---

[1] The 2004 contract was between DOT and Xerox State & Local Solutions, Inc., which was a processing division of Xerox Corporation. After Xerox Corporation divested itself of its processing divisions, Xerox State & Local Solutions, Inc. became a subsidiary of Conduent Incorporated and underwent a formal name change to Conduent State & Local Solutions, Inc.

and price proposals and specified the criteria by which both the technical and price proposals would be judged.  Once the bids were evaluated, the RFP permitted DOT to enter into contract discussions with the bidder it determined to be the best qualified based upon the specified criteria.

DOT scored Conduent higher than it scored Cubic on the price proposal, but scored Cubic higher than it scored Conduent on the technical proposal.  Conduent's total score for both its price and technical proposals was 80.12; Cubic's total score was 80.76.  Accordingly, DOT entered into contract negotiations with Cubic and, ultimately, executed a contract that the Governor and Executive Council approved in October 2015.  We refer to the contract awarded to Cubic as the "back office system services contract."

Conduent subsequently brought the instant action, maintaining in count IX of its complaint that DOT exceeded its statutory authority, thereby violating the separation of powers doctrine, by conducting the procurement at issue.  See N.H. CONST. pt. I, art. 37.  Conduent moved for partial summary judgment on count IX.  DOT moved to dismiss count IX, asserting, in pertinent part, that count IX was unsupported as a matter of law.  Cubic moved to dismiss count IX on similar grounds and also on the ground that Conduent lacked standing to bring a claim for violation of separation of powers.  The trial court resolved Conduent's partial summary judgment motion and the defendants' motions to dismiss in a single, narrative order in which the court assumed without deciding that Conduent has standing and ruled that DOT had authority to procure the back office services system contract under RSA chapter 237 and to use the "best value" method under RSA 21-I:22-a and :22-b (Supp. 2017).  Conduent unsuccessfully moved for reconsideration, and this appeal followed.

I.  Conduent's Standing

Before addressing the merits of Conduent's appellate arguments, we consider Cubic's assertion that Conduent has failed to establish standing to raise them.  See Duncan v. State, 166 N.H. 630, 640 (2014) (explaining that "standing is a question of subject matter jurisdiction").

"When a motion to dismiss challenges the [plaintiff's] standing to sue, the trial court must look beyond the [plaintiff's] unsubstantiated allegations and determine, based on the facts, whether the [plaintiff has] sufficiently demonstrated [its] right to claim relief."  Johnson v. Town of Wolfeboro Planning Bd., 157 N.H. 94, 96 (2008) (quotation and ellipsis omitted).  Because the underlying facts are not in dispute, we make the standing determination de novo.  See id.

"Standing under the New Hampshire Constitution requires parties to have personal legal or equitable rights that are adverse to one another, with regard to an actual, not hypothetical, dispute, which is capable of judicial

3

redress." State v. Actavis Pharma, 170 N.H. 211, 214 (2017) (quotation and brackets omitted). "In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." Id. at 215 (quotation omitted). "Neither an abstract interest in ensuring that the State Constitution is observed nor an injury indistinguishable from a generalized wrong allegedly suffered by the public at large is sufficient to constitute a personal, concrete interest." Id. (quotations omitted). "Rather, the party must show that its own rights have been or will be directly affected." Id. (quotation omitted).

In arguing that Conduent lacks standing, Cubic relies primarily upon Actavis. The issue in that case was whether the defendant pharmaceutical companies had standing to claim that a contingency fee agreement between the Office of the Attorney General (OAG) and outside counsel was ultra vires because the OAG had failed to obtain legislative and executive approval before retaining such counsel, as required by statute. Id. at 212-13. The defendants argued that they had standing because the contingency fee agreement tainted the OAG's investigation of them and because they were the targets of subpoenas issued in that investigation. Id. at 214. We rejected that argument, holding that the defendants had failed to establish an actual dispute "[b]ecause the alleged injury — an investigation allegedly inherently biased by [the outside counsel's] participation — cannot fairly be traced to the challenged violation — the State's failure to obtain legislative and executive approval before retaining outside counsel on a contingency fee basis." Id. at 216 (quotation omitted).

Cubic contends that, similar to the defendants in Actavis, Conduent "cannot demonstrate that it sustained an injury traceable to the alleged separation of powers violation." Cubic asserts that "if [DOT] lacked the authority [to] conduct the procurement, this would not result [in] a contract award to Conduent," observing that Conduent "did not seek this relief through Count IX," but rather sought only a declaration that the procurement was unlawful and that the resulting contract with Cubic was void.

We conclude that Conduent has demonstrated the requisite causal connection between its injury — not being selected as the successful bidder — and the claimed violation — a procurement conducted by DOT using the best value method to evaluate bids — sufficient to establish standing. The fact that Conduent sought declaratory relief, rather than an injunction, is not dispositive, particularly in light of the trial court's determination that sovereign immunity renders DOT immune from Conduent's previously-pleaded claim for injunctive relief.

## II. Conduent's Appeal Issues

We turn now to the merits of Conduent's appeal. Although the issues in this case were presented to the trial court in the context of a partial summary

4

judgment motion and two motions to dismiss, the only issues on appeal concern pure questions of law. Resolving the issues on appeal requires that we engage in statutory interpretation. We review the trial court's statutory interpretation de novo. Polonsky v. Town of Bedford, 171 N.H. ___, ___ (decided June 28, 2018) (slip op. at 4). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent. Id. (slip op. at 4-5).

Conduent first argues that DOT lacked statutory authority to procure a new back office services system contract. According to Conduent, pursuant to RSA chapter 21-I, "[a]ll procurements" for executive branch administrative agencies "must be conducted by [DAS] unless they are carried out by a statutorily exempt agency or they fall within [DOT's] authority to procure construction contracts for highways, bridges, and the like." Conduent maintains that DOT is not a statutorily-exempt agency and that "the parties . . . agree that the [back office services system] contract is not for such forms of construction." Thus, because RSA chapter 21-I "assigns to [DAS] the authority to procure for [DOT] except in limited specified cases not present here, [DOT's] procurement of the E-ZPass [back office services system] and the resulting contract with Cubic were ultra vires."

We do not share Conduent's interpretation of RSA chapter 21-I. Rather, we agree with DOT that, pursuant to the plain meaning of the statute governing DAS's procurement authority, the legislature did not intend DAS's authority to be exclusive. DAS's procurement authority is set forth in RSA 21-I:11 (Supp. 2017). RSA 21-I:11, I(a)(1) provides, in pertinent part, that, "in accordance with applicable law," the division of procurement and support services, which is part of DAS, "shall be responsible for," among other things, "[p]urchasing all materials, equipment, supplies, and services for all departments and agencies of the state including contracting for the purchase or rental of data processing equipment . . . , except as otherwise provided by law." (Emphases added.) Under the plain meaning of that provision, DAS's procurement authority is not absolute, but rather is qualified by other laws. Although Conduent asserts that the only law to which DAS's procurement authority is subject are other provisions in RSA chapter 21-I, the plain

5

language of RSA 21-I:11, I(a)(1) is not so limited. Thus, we reject Conduent's argument that DOT could not have had authority to procure the back office services system contract because the legislature delegated that authority, exclusively, to DAS.

Conduent next asserts that the trial court erred when it ruled that RSA chapter 237 gave DOT the authority to procure the back office services system contract. RSA chapter 237 grants DOT broad authority to improve, operate, and maintain the "New Hampshire Turnpike System," which comprises the toll highways in the state. RSA 237:1, III (2012); see RSA 237:2, :5 (Supp. 2017). In order to improve, operate, and maintain the turnpike system, DOT has the authority to: (1) acquire land, see RSA 237:2, II, VII(a), :5, II(b); (2) engage in construction projects, see RSA 237:2, II-c, II-d, II-e, IV(b), (d), (g), VII, : 5, II(e), (f); and (3) commission or conduct studies, see RSA 237:2, II-a, VII(a), 5, II(k), (l). RSA chapter 237 requires DOT to award construction contracts to "the lowest responsible bidder." RSA 237:14 (2012). Otherwise, RSA chapter 237 does not refer to how DOT may conduct competitive bidding.

Specifically included in DOT's authority to operate and maintain the turnpike system is the authority to "[e]nter into contractual relations on behalf of the state," RSA 237:5, II(i), and "perform all such acts as are necessary for the public good," RSA 237:5, II(j). As well, DOT may employ "such assistants, engineers or consulting services" as may be necessary to conduct certain studies and, upon legislative approval, "extend or add" to the turnpike system based upon their recommendations. RSA 237:5, II(m); see RSA 237:5, II(k), (l).

DOT has the authority, with the approval of the Governor and Executive Council, to "establish toll rates and other charges" for using the turnpike system. RSA 237:9 (Supp. 2017); see RSA 237:24 (2012) (referring to tolls for using the eastern New Hampshire turnpike), :40 (2012) (referring to tolls for the use of the central New Hampshire turnpike). DOT is authorized to install "intelligent transportation systems infrastructure" on a portion of the "F.E. Everett Turnpike," RSA 237:2, IV(i), and "[a]cquire and install new toll collection equipment," RSA 237:2, VIII.

As to the E-ZPass system, in particular, RSA chapter 237 expressly authorizes DOT "to execute all documents and perform all other acts necessary to enter into and carry out the provisions of a regional electronic toll collection system agreement . . . in order to increase the efficiency of turnpike operation and to improve traffic management in the state and region," RSA 237:16-b (2012). Additionally, DOT has the discretion to "approve the use of the E-ZPass system for the payment of non-toll based financial obligations voluntarily incurred by an account holder." RSA 237:16-g (2012).

We conclude that the broad authority conferred upon DOT by RSA chapter 237 to improve, operate, and maintain the turnpike system, in general,

and to operate the E-ZPass system, in particular, includes the authority to procure a new back office services system for the E-ZPass system. Procuring such a system involves "[e]nter[ing] into contractual relations on behalf of the state," RSA 237:5, II(i); "perform[ing] all such acts as are necessary for the public good," RSA 237:5, II(j); "[a]cquir[ing] and install[ing] new toll collection equipment," RSA 237:2, VIII; and "perform[ing] all . . . acts necessary to . . . carry out the provisions of a regional electronic toll collection system agreement . . . in order to increase the efficiency of turnpike operation and to improve traffic management in the state and region," RSA 237:16-b.

Conduent next contends that the trial court erred when it determined that RSA 21-I:22-a and :22-b allow DOT to use the best value method to evaluate competing bids. Conduent asserts that, generally, state agencies must award a state contract to the lowest bidder who meets the project's specifications. According to Conduent, the best value method allows a state agency to evaluate competitive bids based upon subjective factors and to weigh price less heavily than other factors. See Carl. J. Peckinpaugh & Joseph M. Goldstein, Best Value Source Selection—Contracting for Value, or Unfettered Agency Discretion?, 22 Pub. Cont. L. J. 275, 276 (1992) (explaining that, under the best value method, "an agency reserves the right to trade off cost and technical considerations in selecting the successful offeror, according to specific evaluation criteria stated in the solicitation" (footnote omitted)). Conduent argues that neither RSA 21-I:22-a nor :22-b permit a state agency to do this. Thus, Conduent maintains that DOT had no authority to use the best value method to evaluate the competitive bids in this case.

Conduent's interpretation of RSA 21-I:22-a and :22-b is flawed. Those statutes allow the use of subjective criteria and do not require price to be given more weight than any other valid criterion. RSA 21-I:22-a pertains to "every request for purchases . . . , request for quotes . . . or other procurement which is greater than $35,000 that is undertaken by the state or by a state agency." It provides that every such request must "contain within the body of the document the objective criteria by which each submission will be reviewed, if there are particular requirements that will receive more weight in the review of the submission, and the standards upon which any award will be based." RSA 21-I:22-a. Although RSA 21-I:22-a refers to "objective criteria," it does not preclude the use of subjective factors. Moreover, RSA 21-I:22-a specifically allows an agency, such as DOT, to weigh criteria and does not require that price be weighed more heavily than any other factor.

RSA 21-I:22-b provides that "awards which are made by the state or by a state agency . . . shall not be made on criteria that are unknown to the parties submitting bids or proposals." It also provides that "[n]othing in this subdivision shall prevent the state or a state agency . . . from making judgments on the capabilities of vendors to complete the work requested if this option is clearly stated in the body of the document and if used as the reason

7

for the award, is so stated." RSA 21-I:22-b. Thus, RSA 22-I:22-b expressly allows a state agency, such as DOT, to make "judgments" on the "capabilities of vendors" to complete the requested work, which necessarily entails making subjective determinations. Together, RSA 21-I:22-a and :22-b allow a state agency, such as DOT, to use its subjective judgment and to weigh other factors more heavily than price.[2]

Conduent next argues that because DOT acted without statutory authority, the contract with Cubic is ultra vires and violates the separation of powers doctrine. See N.H. CONST. pt. I, art. 37. We necessarily reject this argument in light of our determination that DOT had the statutory authority not only to procure the back office services system contract, but also to use the best value method to evaluate the competing bids.

For all of the above reasons, we conclude that the trial court correctly determined that DOT had the authority to procure the back office systems contract by using the best value method for evaluating competing bids.

Affirmed.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

---

[2] Although RSA 228:4 (Supp. 2017) requires DOT to select the lowest responsible bidder — in other words, to weigh price more heavily than any other factor — for "state transportation project[s]," the trial court ruled that this statute does not apply to the procurement at issue and its ruling has not been appealed. See RSA 228:1, VII (Supp. 2017) (defining a "project" as "any construction, reconstruction, alteration, or maintenance of any highway, bridge, building, plant, fixture, facility or other item directly related to transportation").