FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN BANKERS MANAGEMENT COMPANY, INC.,

*Plaintiff-Appellant*,

v.

ERIC L. HERYFORD, District Attorney, Trinity County,

*Defendant-Appellee*.

No. 16-16103

D.C. No.
2:16-cv-00312-
TLN-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted November 17, 2017
San Francisco, California

Filed March 15, 2018

Before: Richard R. Clifton and Michelle T. Friedland,
Circuit Judges, and Sharon L. Gleason,* District Judge.

Opinion by Judge Friedland

---

*The Honorable Sharon L. Gleason, United States District Judge for the District of Alaska, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's dismissal of a civil rights action brought by American Bankers Management Company seeking declaratory and injunctive relief to prevent the District Attorney of Trinity County, California, from retaining private counsel on a contingency-fee basis to litigate, in the District Attorney's name, an action against American Bankers under California's Unfair Competition Law.

Citing *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993), the panel rejected American Bankers' contention that the District Attorney's retention of private counsel on a contingency-fee basis violated federal due process principles. The panel held that the District Attorney's retention of private counsel to pursue civil penalties under state law cannot be meaningfully distinguished from a private relator's pursuit of civil penalties under the qui tam provisions of the False Claim Act, an arrangement that this court already held, in *Kelly*, does not violate due process.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Brian P. Perryman (argued), W. Glenn Merten, and Frank G. Burt, Carlton Fields Jorden Burt PA, Washington, D.C.; Valerie D. Escalante and Meredith M. Moss, Carlton Fields Jorden Burt LLP, Los Angeles, California; for Plaintiff-Appellant.

Roland K. Tellis (argued) and Jonas P. Mann, Baron & Budd P.C., Encino, California; S. Ann Saucer, Baron & Budd P.C., Dallas, Texas; Eric L. Heryford, Trinity County District Attorney, Weaverville, California; for Defendant-Appellee.

John H. Beisner, Geoffrey M. Wyatt, and Jordan M. Schwartz, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; Kate Comerford Todd and Sheldon Gilbert, U.S. Chamber Litigation Center Inc., Washington, D.C.; James C. Stansel and Melissa B. Kimmel, The Pharmaceutical Research and Manufacturers of America, Washington, D.C.; for Amici Curiae Chamber of Commerce of the United States of America, and The Pharmaceutical Research and Manufacturers of America.

Aileen M. McGrath, Deputy City Attorney; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; Laura S. Trice, Deputy County Counsel; Danny Y. Chou, Assistant County Counsel; Greta S. Hansen, Chief Assistant County Counsel; James R. Williams, County Counsel; Office of the County Counsel, San Jose, California; for Amici Curiae City and County of San Francisco and County of Santa Clara.

**OPINION**

FRIEDLAND, Circuit Judge:

Plaintiff-Appellant American Bankers Management Company, Inc. filed this civil rights action seeking declaratory and injunctive relief to prevent Eric L. Heryford, the District Attorney of Trinity County, California, from retaining private counsel on a contingency-fee basis to litigate in Heryford's name an action against American Bankers under California's Unfair Competition Law. American Bankers argues that the arrangement violates federal due process principles. We disagree. Heryford's retention of private counsel to pursue civil penalties under state law cannot be meaningfully distinguished from a private relator's pursuit of civil penalties under the qui tam provisions of the False Claim Act, an arrangement that we have already held does not violate due process. We therefore affirm the district court's dismissal of American Bankers' civil rights action against Heryford.

## I.

The story of this lawsuit starts with a different lawsuit, one that Heryford filed against American Bankers and several other companies on behalf of the people of California under California's Unfair Competition Law ("the UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. That lawsuit was filed by Heryford in Trinity County Superior Court on behalf of "the People of California, by and through the District Attorney for the County of Trinity." Heryford alleged that the defendants had "engaged in deceptive marketing and sales practices in connection with" services offered to California holders of certain credit cards. For these alleged violations, the complaint sought injunctive relief, restitution, attorney's fees, and—most relevant here—civil penalties.

Although private parties may seek injunctive relief and restitution under the UCL, only a public prosecutor such as Heryford may pursue civil penalties. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1174 (9th Cir. 2014); *see also* Cal. Bus. & Prof. Code §§ 17204, 17206.

Attorneys from the district attorney's office were not the only counsel listed on the complaint. Attorneys from Baron & Budd, P.C. and Carter Wolden Curtis, LLP were too. Heryford's office had retained these law firms along with Golomb & Honik, P.C. (collectively, "the Law Firms") under an agreement designating them as "Special Assistant District Attorneys." Under the agreement, the Law Firms were charged with "assist[ing] in the investigation, research, filing and prosecution" of the UCL suit against American Bankers and its co-defendants. More specifically, the agreement required the Law Firms to "provide all legal services that are reasonably necessary for such representation and assistance, including without limitation, the preparation and filing of all claims, pleadings, responses, motions, petitions, memoranda, brief[s], notices and other documents," and to "conduct negotiations and provide representations at all hearings, depositions, trials, appeals, and other appearances as may be required." The agreement gave the Law Firms "the authority and responsibility to control and direct the performance and details of" their work.

The agreement also stated, however, that the Law Firms would work "under the direction of the District Attorney," and that his office did "not relinquish its constitutional or statutory authority or responsibility." Heryford retained "sole and final authority to initiate and settle" the UCL suit, along with "final authority over all aspects of the litigation." He also had "a general right to inspect work in progress to

determine whether . . . the services [we]re being performed by the Law Firms in compliance with" the agreement.

Heryford retained the Law Firms on a contingency-fee basis. Under the terms of the agreement, the Law Firms would bear "[a]ll reasonable and necessary costs of litigation," for which they would be reimbursed from any recovery in the action. They were also entitled to thirty percent of any remaining funds. If the UCL suit did not result in a recovery, the Law Firms would neither be reimbursed for their expenses nor compensated for their services.[1]  Heryford told the Trinity County Board of Supervisors that this arrangement meant there was "a lot of upside with not a lot of downside for [his] office or the county." The UCL suit, he contended, was "not going to be additional work for [Heryford's] staff" because the Law Firms were "going to handle the litigation part of this." He made similar statements to a local newspaper.

American Bankers filed a civil rights action against Heryford in the United States District Court for the Eastern District of California, challenging the contingency-fee agreement as a violation of its federal due process rights, which is the lawsuit now on appeal before us.[2]  Days after that action was filed, Heryford and the Law Firms voluntarily dismissed the UCL suit pending in Trinity

---

[1] The Law Firms would be "entitled to reasonable payment for services rendered" if Heryford decided to terminate their representation.

[2] In its original complaint, American Bankers alleged that the contingency-fee agreement "violates California's Government Code" in addition to due process, but it later filed an amended complaint that asserted only a due process violation.

County Superior Court, only to refile it the next month in the Eastern District, where it apparently remains pending.

American Bankers alleged that the contingency-fee agreement between Heryford and the Law Firms gave the latter "a direct and substantial financial stake in the imposition of civil penalties and restitution," which "compromise[d] the integrity and fairness of the prosecutorial motive and the public's faith in the judicial process." American Bankers sought a declaration that the arrangement violated due process and an injunction "allowing the UCL Suit to proceed . . . but prohibiting the District Attorney from employing the Law Firms to prosecute the UCL Suit under their existing contingency-fee agreement."

Heryford moved to dismiss, and American Bankers moved for summary judgment. The district court considered the motions together, granting the former with leave to amend and denying the latter as moot. American Bankers opted not to amend and asked the district court to enter judgment, which it did. This appeal followed.

## II.

As a threshold matter, Heryford asks us, under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), to exercise our "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), and to decline to decide this case. In addition to declaratory relief, however, American Bankers seeks injunctive relief that is independent of, but related to, the requested declaratory relief. *Brillhart* does not apply in such circumstances. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1040 (9th Cir. 2013). We therefore exercise the jurisdiction given to us and

proceed to the merits, consistent with our "virtually unflagging obligation" to do so. *Id.* at 1041 (quoting *Gilbertson v. Albright*, 381 F.3d 965, 982 n.17 (9th Cir. 2004) (en banc)); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

## III.

Although civil penalty provisions are common across federal and state enforcement regimes, we are the first circuit to consider whether government officials may, without violating federal due process, retain private counsel on a contingency-fee basis to litigate an action for civil penalties.[3]  Despite the lack of federal precedent directly on point, our decision in *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993), compels us to reject American Bankers' due process claim.

## A.

In *Kelly*, we rejected a due process challenge to contingent monetary awards for private plaintiffs bringing qui tam actions under the False Claims Act. *See* 9 F.3d at 759–60.  Originally signed into law during the Civil War by

---

[3] A handful of state high courts have touched on this question, and none has held that such agreements violate due process. *See State v. Actavis Pharma, Inc.*, 167 A.3d 1277, 1284–85 (N.H. 2017), *cert. denied sub nom. Endo Pharm. Inc. v. New Hampshire*, No. 17-633, 2018 WL 1143897 (U.S. Mar. 5, 2018); *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 630 n.20 (W. Va. 2013); *State v. Lead Indus. Ass'n*, 951 A.2d 428, 475 (R.I. 2008); *Philip Morris Inc. v. Glendening*, 709 A.2d 1230, 1242–44 (Md. 1998).

President Abraham Lincoln,[4] the False Claims Act exposes those who commit fraud against the federal government to treble damages and civil penalties, both of which "are essentially punitive in nature." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768–69, 784 (2000). The statute's qui tam provisions allow private plaintiffs—often called "relators"—to bring a civil action to recover damages and civil penalties "for the person and for the United States Government," though any such action is "brought in the name of the Government." *Kelly*, 9 F.3d at 745–46 (quoting 31 U.S.C. § 3730(b)(1)). The Government may choose to take over the litigation, 31 U.S.C. § 3730(b)(2), but the relator otherwise "ha[s] the right to conduct the action" alone, *id.* § 3730(c)(3).[5]

If successful, relators conducting actions themselves generally receive between twenty-five and thirty percent of any recovery in the action.[6] *See* 31 U.S.C. § 3730(d)(2)–(3). This means that the dollar amount of qui tam relators' compensation for independently litigating enforcement actions is not fixed by law. Rather, it depends on there being a recovery—and the compensation increases as the damages and civil penalties increase. If there is no recovery, relators

---

[4] For this reason, the False Claims Act has been called Lincoln's Law. *See United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1013 n.1 (9th Cir. 2017).

[5] In *Kelly*, the government did not intervene in the litigation. 9 F.3d at 745.

[6] Successful relators also receive reimbursement for expenses, as well as attorney's fees and costs, which are "awarded against the defendant." 31 U.S.C. § 3730(d)(2).

come out worse than empty handed because they bear the costs they incurred during the litigation.

The defendant in *Kelly* argued that this "promise of a reward to relators for successful prosecution create[d] a conflict of interest between a relator's desire for pecuniary gain and duty as a prosecutor performing 'government functions' to seek a just and fair result." 9 F.3d at 759. We disagreed, explaining that prosecutors "need not be entirely neutral and detached." *Id.* (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980)) (internal quotation marks omitted).

We further explained in *Kelly* that "the fact that relators sue in the name of the United States does not mean that they wield governmental powers and therefore owe the same type of duty to serve the public interest as government prosecutors." *Id.* at 760. Instead, the False Claims Act "effectively assigns the government's claims to qui tam plaintiffs . . . who then may sue based upon an injury to the federal treasury," but who otherwise function in court like private civil litigants. *Id.* at 748, 760. Relators thus "do not have the 'power to employ the full machinery of the state in scrutinizing any given individual.'" *Id.* at 760 (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987)). Unlike government prosecutors, they cannot employ "police investigation and interrogation, warrants, immunized informers and agents, authorized wiretapping, civil investigatory demands, [or] enhanced subpoena power." *Id.* (quoting *Young*, 481 U.S. at 811). Rather, they "pursue their claims essentially as private plaintiffs, except that the government may displace a relator as the party with primary authority for prosecuting an action." *Id.*

For all these reasons, we held that "qui tam litigation does not implicate due process concerns." *Id.*

## B.

*Kelly* controls this case. It is true, as American Bankers argues, that under the contingency-fee agreement with Heryford, the Law Firms have a financial incentive to seek as much in civil penalties as possible. But the same is true of private relators bringing qui tam actions under the False Claims Act. *See* 31 U.S.C. § 3730(d)(1)–(2). It is also true that the UCL suit was brought "in the name of the people of the State of California," Cal. Bus. & Prof. Code § 17206(a), so the Law Firms are in a sense appearing as representatives of the public, which might lend credibility to the plaintiff's position in the eyes of a factfinder. But qui tam actions under the False Claims Act are similarly brought "in the name of the [United States] Government." 31 U.S.C. § 3730(b). And it is further true that American Bankers faces civil penalties designed to punish and deter. Cal. Bus. & Prof. Code § 17206. But so too do defendants in qui tam actions under the False Claims Act. *See Stevens*, 529 U.S. at 784–85.

American Bankers contends that this case is nevertheless distinguishable from *Kelly* because the Law Firms are not acting in the UCL suit "essentially as private plaintiffs," *Kelly*, 9 F.3d at 760, as would a relator going it alone under the False Claims Act. American Bankers argues that, as "Special Assistant District Attorneys," the Law Firms have prosecutorial tools that qui tam plaintiffs lack. But the Law Firms do not have "the power to employ the full machinery of the state," *id.* (quoting *Young*, 481 U.S. at 814), against American Bankers. To the contrary, the contingency-fee agreement makes clear that the Law Firms' resources, not those of the state, will be brought to bear in the UCL suit. The Law Firms must themselves hire any personnel needed

to litigate the UCL suit.  They must also front the costs of the litigation.

And although Heryford has prosecutorial powers at his disposal, nothing suggests that *the Law Firms* may exercise such powers unilaterally.  For example, American Bankers maintains that, unlike private litigants, Heryford could use administrative subpoenas under California Government Code § 11181 to gather evidence "[i]n connection with any investigation or action authorized by this article," which under § 11180(a) includes "[a]ll matters relating to the business activities and subjects under the jurisdiction of the department."  But American Bankers has not alleged that the Law Firms can use Heryford's administrative subpoena power without Heryford's participation.  Nor have they alleged that there would be any due process concern with Heryford's issuing an administrative subpoena and then litigating the UCL suit on his own.[7]

American Bankers also maintains that, unlike private litigants, Heryford could authorize wiretapping or other forms of electronic surveillance to obtain evidence in the UCL suit.  This argument falls flat too.  Federal law would prevent any such effort involving wiretapping.  Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521, sets federal limits on wiretapping authorization, and states are not permitted to adopt less restrictive controls.  *Villa v. Maricopa Cty.*, 865 F.3d 1224, 1230 (9th Cir. 2017).  For example, Title III establishes strict

---

[7] Moreover, the root of American Bankers' concern about the administrative subpoena power is that it allows subpoenas to issue *before* any action is filed.  But no subpoenas issued here before the UCL suit was filed.  The Law Firms were retained to litigate a particular lawsuit that Heryford had already agreed to bring, and they signed the contingency-fee agreement a mere one day before that lawsuit was filed.

limits on who may apply for a wiretap.  In a state proceeding, an application for "interception of wire, oral, or electronic communications" may be submitted to a state court judge only by the "principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State."  18 U.S.C. § 2516(2).  The principal prosecuting attorney must be "personally familiar with all of 'the facts and circumstances' justifying his or her 'belief that an order should be issued.'"  *Villa*, 865 F.3d at 1234 (quoting 18 U.S.C. § 2518(1)(b)).  The principal prosecuting attorney may not merely "state that he or she is generally aware of the criminal investigation, that he or she authorizes a deputy to seek wiretaps, and that his or her deputy has been authorized to review and present to the court the evidence in support of the wiretaps."  *Id.*  Also, federal law allows wiretapping only in criminal investigations, and only in investigations of certain crimes at that.  *See* 18 U.S.C. § 2516; *see also*, *e.g.*, *United States v. Garcia-Villalba*, 585 F.3d 1223, 1227 (9th Cir. 2009) ("Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, allows law enforcement agencies to conduct electronic surveillance of suspected criminal activities.").

California law of course reflects the restrictions required by federal law, and in some ways it goes further.  When it comes to wiretapping, as mandated by federal law California law requires a "specified law enforcement official[]," like a district attorney, to obtain a court order, which will issue only if, among other things, there is "probable cause to believe the target was involved" in a statutorily enumerated crime.  *People v. Leon*, 150 P.3d 207, 210 (Cal. 2007); *see also* Cal. Penal Code §§ 629.50, 629.52.  California law additionally prohibits other forms of "electronic recording and eavesdropping," unless done "in the course of criminal

investigations." *Rattray v. City of National City*, 51 F.3d 793, 797 (9th Cir. 1994); *see also* Cal. Penal Code § 630 ("The Legislature recognizes that law enforcement agencies have a legitimate need to employ modern listening devices and techniques *in the investigation of criminal conduct and the apprehension of lawbreakers*." (emphasis added)). Whereas federal law allows a private person to record conversations surreptitiously if one party to the conversation consents, *see* 18 U.S.C. § 2511(2)(d), California requires the consent of all parties, unless law enforcement is involved,[8] s*ee* Cal. Penal Code §§ 632, 633. In short, federal and California law together ensure that wiretapping or other forms of electronic surveillance will not be used—let alone abused—in the UCL suit at issue here.

In sum, nothing meaningfully distinguishes the Law Firms' pursuit of civil penalties under the UCL from private relators' pursuit of civil penalties under the qui tam provisions of the False Claims Act. Indeed, nothing meaningfully distinguishes the situation here from a hypothetical one in which California has amended the UCL to allow private plaintiffs to pursue civil penalties—and *Kelly* leaves no doubt that California could, consistent with federal due process, do just that.[9] Because *Kelly* held that

---

[8] It might well be true that, if evidence obtained in a criminal investigation using some form of electronic recording or eavesdropping spawned a parallel civil action, government prosecutors could use such evidence in the parallel civil action. *See, e.g.*, *Telish v. Cal. State Pers. Bd.*, 184 Cal. Rptr. 3d 873, 883 (Ct. App. 2015). But American Bankers has not alleged that anything like that happened in the UCL suit at issue here, let alone that the Law Firms were involved in (or given free rein to conduct) any prior criminal investigation.

[9] To the extent one could argue that the contingency-fee agreement between Heryford and the Law Firms thwarts California's decision not

the qui tam provisions of the False Claims Act do not offend due process, and because the contingency-fee arrangement here is not meaningfully different from qui tam litigation in terms of the incentives it creates or the powers it confers, we hold that the contingency-fee arrangement at issue here does not offend due process either.[10]

## C.

Our conclusion accords with Supreme Court precedent. In *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980), the Court observed that prosecutors in an adversary system "are necessarily permitted to be zealous in their enforcement of the law." *Id.* at 248. For this reason, the "constitutional interests in accurate finding of facts and application of law, and in preserving a fair and open process for decision, are not to the same degree implicated if it is the prosecutor, and not the judge, who is offered an incentive for securing civil penalties." *Id.* at 248–49. Thus, the "rigid requirements" against financial incentives recognized in cases such as *Tumey v. Ohio*, 273 U.S. 510 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), apply only to public "officials performing judicial or quasi-judicial functions,"

---

to write the UCL like Congress did the False Claims Act, that state-law question does not affect American Bankers' federal due process rights, which are the sole bases for the claims at issue here.

[10] Heryford argues that because he supervises the Law Firms and maintains ultimate authority over the litigation, and because he is a government attorney with no personal financial stake in the outcome of the litigation, there is not even the potential for a due process problem here. Our holding does not turn on Heryford's exercise of control, however, because *Kelly* dictates the result in this case regardless of how much actual day-to-day supervision Heryford exerts.

not to public officials "acting in a prosecutorial or plaintiff-like capacity." *Marshall*, 446 U.S. at 248.

Granted, in *Marshall* the Supreme Court cautioned that it was not suggesting "the Due Process Clause imposes no limits on the partisanship of" prosecutors, for they "are also public officials" who "must serve the public interest," and that a "scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Id.* at 249–50. The Court nevertheless declined to "say with precision what limits there may be on a financial or personal interest of one who performs a prosecutorial function" because, on the facts at issue in *Marshall*, "the influence alleged to impose bias [was] exceptionally remote." *Id.* at 250.

American Bankers argues that, by "giving the Law Firms a sizeable contingent stake in the UCL Suit's outcome," the contingency-fee agreement "directly injects the Law Firms' financial interest into the enforcement process" to an extent that might have concerned the Court in *Marshall*. But the same was true in *Kelly*, where we rejected precisely this argument. We emphasized in *Kelly* that the "contention that the *Marshall* Court 'strongly suggested' that the Due Process Clause prohibits civil prosecutions by financially interested prosecutors is exaggerated, and does not support a finding of a due process violation."[11] *Kelly*, 9 F.3d at 759.

---

[11] The UCL provides that, "[i]f the action is brought by a district attorney or county counsel, the penalty collected shall be paid to the treasurer of the county in which the judgment was entered" and that those funds "shall be" used "for the enforcement of consumer protection laws."

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), is also of no help to American Bankers. In *Young*, the Supreme Court held that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a [criminal] contempt action alleging a violation of that order." *Id.* at 809. Rather than a financial conflict, the problem in *Young* was that the appointed prosecutor was forced "to serve two masters": his client on the one hand and a "public responsibility for the attainment of justice" in a criminal proceeding on the other. *Id.* at 814. Moreover, the decision was grounded in the Court's "supervisory power," not due process.[12] *Young*, 481 U.S. at 790. We distinguished *Young* on these same grounds in *Kelly*, dismissing as "misplaced" the argument that *Young* established a due process bar to financial incentives for pursuing civil penalties. *See Kelly*, 9 F.3d at 759–60. The argument is as misplaced now as it was then.

---

Cal. Bus. & Prof. Code § 17206(c). American Bankers does not suggest that this arguable "prospect of institutional gain," *Marshall*, 446 U.S. at 250, creates an unconstitutional risk of bias for district attorneys like Heryford.

[12] Similarly, the California Supreme Court's decisions in *People ex rel. Clancy v. Superior Court*, 705 P.2d 347 (Cal. 1985), and *County of Santa Clara v. Superior Court*, 235 P.3d 21 (Cal. 2010), were based not on federal due process principles, but on "the courts' general authority 'to disqualify counsel when necessary in the furtherance of justice.'" *Santa Clara*, 235 P.3d at 29 (quoting *Clancy*, 705 P.2d at 350). We decline to constitutionalize the state-law test set forth in those decisions. Accordingly, American Bankers' request for judicial notice of "prior federal litigation in which Heryford and his amici" argued that "UCL suits are akin to criminal enforcement actions"—material that would only even potentially be relevant if we were to apply the legal test articulated in *Clancy* and *Santa Clara*—is **DENIED**.

**IV.**

For the foregoing reasons, we **AFFIRM**.