Filed 4/26/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE PEOPLE ex rel. CITY OF SAN DIEGO,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>EXPERIAN DATA CORP.,<br><br>    Defendant and Appellant. | G060360<br><br>(Super. Ct. No. 30-2019-01047183)<br><br>O P I N I O N |


Appeal from an order of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Jones Day, Nathaniel P. Garrett, Richard J. Grabowski, John A. Vogt, Edward S. Chang and Ryan D. Ball for Defendant and Appellant.

Mara W. Elliott, City Attorney, Mark Ankcorn and Kevin King, Deputy City Attorneys; Blood Hurst & O'Reardon, Timothy G. Blood and Paula R. Brown for Plaintiff and Respondent.

\*        \*        \*

INTRODUCTION

The City of San Diego (the City) sued Experian Data Corp. (Experian) on behalf of the People of the State of California for violating the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL). The City hired three private law firms to represent it in the litigation against Experian on a contingency fee basis. The trial court denied Experian's motion to disqualify the private law firms; we affirm.

The contingency fee arrangements between the City and the private law firms in a UCL action filed by the City's attorneys do not violate the prosecutor's duty of neutrality and therefore do not require disqualification. Further, the agreements to pay the private law firms from any penalties recovered from Experian do not violate Business and Professions Code section 17206's requirement that all funds recovered in a UCL action be paid to the City's treasurer.

FACTUAL AND PROCEDURAL HISTORY

U.S. Infosearch.com (USI) is an Ohio-based company that sells data, including social security numbers and other personal data, to licensed investigators, government agencies, and legal industry professionals. Court Ventures, Inc. (CVI) was a California-based corporation that aggregated consumer information from publicly available databases and sold that data. In April 2010, USI and CVI entered into a data-sharing agreement under which the consumer information they had each collected would be aggregated and made available to customers through appcheckdata.com, a web portal owned by CVI.

In March 2012, Experian purchased the business, assets, and liabilities of CVI, including its data services, customer contracts, and the appcheckdata.com website.

SG Investigators, purportedly a private investigation firm based in Singapore, was a customer of USI/CVI and then of Experian. Through appcheckdata.com, SG Investigators and its customers conducted more than three million

queries, obtaining personal information of more than 400,000 California residents. In November 2012, Experian learned that SG Investigators was a front for a Vietnamese hacker named Hieu Minh Ngo who was reselling the data to identity thieves and others using it for nonlegal purposes. Ngo was later arrested, pleaded guilty, and was sentenced to 13 years in prison.

In July 2015, a federal lawsuit was filed on behalf of those whose personal data was sold to Ngo, *Patton v. Experian Data Corp.* (C.D.Cal., case No. 8:15-cv-01142-JVS-PLA) (the *Patton* litigation). Three law firms—Blood Hurst & O'Reardon, LLP, Barnow and Associates, P.C., and the Coffman Law Firm (collectively the Private Firms)—represented the plaintiff class in the *Patton* litigation. The *Patton* litigation plaintiffs asserted claims against Experian, CVI, and USI for intentional and negligent violation of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) and for violation of the UCL. The complaint was later amended to add a claim for injunctive relief under the Customer Records Act. (Civ. Code, § 1798.82.) The district court dismissed the California plaintiffs from the *Patton* litigation for failure to state a claim, as they could not allege they were customers of Experian.

The City then filed a UCL complaint in the California Superior Court against Experian, CVI, and USI on behalf of the People of the State of California (the UCL litigation). The UCL litigation alleges that Experian violated the UCL by failing to provide notice to victims of the Ngo hack, in violation of the Customer Records Act. The complaint demands civil penalties in the amount of up to $2,500 per violation (Bus. & Prof. Code, § 17206, subd. (a)), with additional penalties for violations against senior citizens and the disabled (*id.*, § 17206.2, subd. (a)(1)). The complaint also seeks to force Experian to provide notice of the data breach to all its victims.

The City hired the Private Firms on a contingency fee basis to provide legal representation in the UCL litigation. According to the parties' agreement, the Private Firms report to and work under the direction and control of the City Attorney. If the

3

Private Firms are successful in obtaining and collecting penalties from Experian in the UCL litigation, they are entitled to receive 25 percent of the gross recovery; the other 75 percent remains in the City's treasury to be used for enforcement of consumer protection laws. Under no circumstance is the City obligated to pay the Private Firms out of any monies other than those recovered and collected from Experian.

From the outset, the City Attorney actively litigated the case; drafted pleadings, motions, and briefs; formulated written discovery requests and responses; participated in hearings and depositions; participated in meet and confer discussions; and oversaw all litigation strategy. The City Attorney has maintained complete control over the prosecution of the UCL litigation and has had the final say in all material litigation decisions.

In February 2021, almost three years after the UCL litigation was filed, Experian moved to disqualify the Private Firms on two grounds. First, Experian argued that the Private Firms' contingency fee arrangement, in a case seeking civil penalties, violated the public prosecutor's duty of neutrality, and thus the fee agreement was per se grounds for disqualification. Second, Experian argued the Private Firms' contingency fee agreement violated the UCL's plain language, which provides that any civil penalties collected "shall be paid to the treasurer of the City of San Diego" (Bus. & Prof. Code, § 17206, subd. (c)(3)(B)) and used exclusively "for the enforcement of consumer protection laws" (*id.*, § 17206, subd. (c)(4)).

The trial court denied Experian's motion in May 2021. The court found that the City was permitted to retain private counsel on a contingency fee basis to litigate an action for civil penalties under the UCL without violating the duty of neutrality. The court also found that while the Private Firms' agreement "could violate [Business and Professions Code] section 17206's requirement of where the penalty funds recovered are deposited," this was not a basis to disqualify counsel.

4

Experian filed a notice of appeal from the trial court's disqualification order on June 14, 2021.

DISCUSSION

I. *Standard of Review*

"'"'Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion."'" [Citation.]  Under this standard, the trial court's legal conclusions are reviewed de novo, but its factual findings are reviewed only for the existence of substantial evidence supporting them, and its '"application of the law to the facts is reversible only if arbitrary and capricious."'" (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 581 [quoting *In re Charlisse C.* (2008) 45 Cal.4th 145, 159].)

II. *The Contingency Agreement Does Not Violate the Duty of Neutrality.*

A criminal prosecutor has a duty of neutrality because he or she must "act with the impartiality required of those who govern," and because "he or she must refrain from abusing [the vast power of the government] by failing to act evenhandedly." (*County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, 49 (*Santa Clara*).) Therefore, compensation of government counsel by contingency fee is prohibited in most if not all circumstances. (*Id.* at p. 51.)  Whether contingency fee agreements with private attorneys are also prohibited in public nuisance prosecutions depends on the type of remedy sought and the types of interests implicated by the case. (*Id.* at p. 52.)

In *Santa Clara, supra*, 50 Cal.4th at page 43, the county was represented by both its government counsel and private counsel in a public nuisance action brought against lead paint manufacturers.  The paint manufacturers sought to disqualify the private counsel who had been retained on a contingency fee basis. (*Ibid.*)  The contingency fee agreements provided that private counsel would recover unreimbursed costs and a percentage of the "net recovery" as their fees. (*Id.* at pp. 44-45.)  The

5

remedies might include civil penalties and the expenditure of funds to clean up the nuisance the defendants had created, but would not involve an injunction shutting down the defendants' business. (*Id.* at pp. 55-56.) Further, no liberty interests were involved. (*Ibid.*) The court therefore determined the contingency fee agreements between the county and the private attorneys were permissible. "[I]n a case where the government's action poses no threat to fundamental constitutional interests and does not threaten the continued operation of an ongoing business, concerns about neutrality are assuaged if the litigation is controlled by neutral attorneys, even if some of the attorneys involved in the case in a subsidiary role have a conflict of interest that might—if present in a public attorney—mandate disqualification." (*Id.* at p. 58.)

The court noted, however, that "a heightened standard of neutrality is required for attorneys prosecuting public-nuisance cases on behalf of the government." (*Santa Clara, supra,* 50 Cal.4th at p. 57.) The court identified the following provisions that must be included in a contingency fee agreement to ensure that this heightened standard of neutrality is met: (1) "decisions regarding settlement of the case are reserved exclusively to the discretion of the public entity's own attorneys"; (2) "any defendant that is the subject of such litigation may contact the lead government attorneys directly, without having to confer with contingent-fee counsel"; (3) "the public-entity attorneys will retain complete control over the course and conduct of the case"; (4) "government attorneys retain a veto power over any decisions made by outside counsel"; and (5) "a government attorney with supervisory authority must be personally involved in overseeing the litigation." (*Id.* at pp. 63-64.)

The contingency fee agreements between the City and the Private Firms contain each of the specific provisions identified in *Santa Clara.*

*Santa Clara, supra,* reexamined and narrowed the holding of *People ex rel. Clancy v. Superior Court* (1985) 39 Cal.3d 740 (*Clancy*), on which Experian relies. In *Clancy*, the city of Corona hired a private attorney to pursue abatement proceedings

6

against adult bookstores in the city as public nuisances. (*Id.* at p. 743.) The agreement between the city and the private attorney provided for an hourly rate, which would be decreased by half if the attorney lost the case or if the city did not recover attorney fees from the bookstore owner. (*Id.* at p. 745.) The California Supreme Court held the contingency fee agreement in that case was prohibited because it was "antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action." (*Id.* at p. 750.) The court noted that contingency fee arrangements between a city and a private attorney were not categorically prohibited: "Nothing we say herein should be construed as preventing the government, under appropriate circumstances, from engaging private counsel. Certainly there are cases in which a government may hire an attorney on a contingent fee to try a civil case. [Citation.] But just as certainly there is a class of civil actions that demands the representative of the government to be absolutely neutral. This requirement precludes the use in such cases of a contingent fee arrangement." (*Id.* at p. 748.)

In *Santa Clara*, the California Supreme Court noted that the public nuisance abatement action in *Clancy* was more like a criminal prosecution because the intent of the abatement proceeding was to shut down the defendant's business, the case involved a heavy balancing of interests between the property owner's right to use his land and the public's interest in eliminating an obnoxious or dangerous condition, and there were free speech interests at issue in the regulation of a book store, albeit one specializing in obscene material. (*Santa Clara, supra*, 50 Cal.4th at p. 53.) By contrast, the public nuisance action in *Santa Clara* did not seek to put the defendant out of business, nor did it implicate any First Amendment rights or other liberty interests, and there was no threat of later criminal liability. (*Id.* at p. 55.) Further, the case posed no threat of "the misuse of governmental resources against an outmatched individual defendant" because the defendants were "large corporations with access to abundant monetary and legal resources." (*Id.* at p. 56.)

7

Despite the fact the contingency fee agreements between the City and the Private Firms meet the standards set forth in *Santa Clara*, Experian argues that the contingency fee arrangement in the matter was categorically prohibited because the civil penalties sought were the same as or substantially similar to criminal sanctions. Experian's focus on penalties is inapt, however. As in *Santa Clara, supra*, 50 Cal.4th at page 58, the UCL litigation "poses no threat" to Experian's constitutional interests or to its ongoing business operations. For this reason, and because they predate *Santa Clara*, the authorities Experian cites are distinguishable.

In *State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1308, the California Supreme Court was asked by the Ninth Circuit to address two questions of law concerning the ability of the Attorney General to pursue civil remedies under the California False Claims Act and the UCL. For these purposes, the court held there was no difference in a UCL action "between the Attorney General's seeking criminal penalties or civil penalties." The use of private counsel was not at issue, nor was it addressed. (See *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 [cases are not authority for propositions not considered therein].)

In *People of State of Cal. v. Steelcase Inc.* (C.D.Cal. 1992) 792 F.Supp. 84, 86, the court noted that civil penalties in a UCL case "are not damages recovered for the benefit of private parties; they are more akin to a criminal enforcement action and are brought in the public interest." The issue before the court was whether diversity jurisdiction existed in a matter where the State was the real party in interest; the question of who could represent the State was, again, not at issue.

Finally, Experian cites to an amicus curiae brief filed in *Gamestop, Inc. v. Superior Court* (2018) 26 Cal.App.5th 502, in which the Attorney General argued that UCL enforcement actions are closely related to and resemble criminal prosecutions. The issue in that appeal was the applicability of Code of Civil Procedure section 394, regarding the transfer of a case where a city or county is the plaintiff; the Attorney

8

General argued that because a district attorney pursues a UCL action on behalf of the People of the State of California, transfer was not permissible. (*Gamestop, Inc. v. Superior Court, supra*, at p. 512.)

More apt to the issue before us is *American Bankers Management Company v. Heryford* (9th Cir. 2018) 885 F.3d 629, 631, in which the Ninth Circuit held that the Trinity County District Attorney's retention of private counsel to pursue civil penalties under the UCL did not violate due process. The contingency fee agreement between the Trinity County District Attorney and private counsel was similar to the agreement here, with private counsel receiving a percentage of the civil penalties they recovered in the UCL action and no recovery if they were unsuccessful. (*Id.* at p. 632.) In a case of first impression, the court compared the situation of a private firm retained by a government attorney to pursue civil penalties under the UCL to that of private relators bringing a qui tam action to recover civil penalties under the federal False Claims Act. (*American Bankers Management Company v. Heryford, supra*, at p. 635, citing *U. S. ex rel. Kelly v. Boeing Co.* (9th Cir. 1993) 9 F.3d 743, 759-760 [contingent monetary rewards in qui tam case do not violate due process].)

Similarly, in *People v. Superior Court (Kaufman)* (1974) 12 Cal.3d 421, the California Supreme Court held that the trial court may grant immunity to a real party in interest to testify in a UCL case in which penalties were being sought. Although a penalty in a UCL case "is unquestionably intended as a deterrent against future misconduct and does constitute a severe punitive exaction by the state," it is not a criminal penalty, does not lead to the stigma of a criminal conviction, and is not imposed as an alternative to the loss of personal liberty. (*Id.* at p. 431; see *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 321 [assessment of civil damages under Bus. & Prof. Code, § 17206 is not a penal sanction; due process does not require proof beyond a reasonable doubt or trial by jury]; *People v. Witzerman* (1972) 29 Cal.App.3d 169, 177 ["It is true that a civil penalty is identical in its purpose and monetary effect to a fine. Both are

9

punitive exactions by the government from a person for misconduct imposed to deter such misconduct in the future. But a fine ordinarily carries with its a criminal stigma and much more frequently than not is an alternative punishment to involuntary confinement of the person of the defendant. In other words, in the usual criminal proceeding a defendant faces the peril of the loss of his liberty as well as that of his property"].)

We conclude that the contingency fee agreements between the City and the Private Firms do not violate the duty of neutrality and do not require disqualification of the Private Firms.

III. *The Contingency Agreements Do Not Violate the UCL.*

All funds collected as penalties for violation of the UCL "shall be paid to the treasurer of the City of San Diego" (Bus. & Prof. Code, § 17206, subd. (c)(3)(B)) and shall be used exclusively "for the enforcement of consumer protection laws" (*id.*, § 17206, subd. (c)(4)).

The contingency fee agreements between the City and the Private Firms provide, in relevant part: "6.7 Reserve for Litigation Fees and Expenses. The City and Law Firm both acknowledge that in the course of the Litigation, the adverse parties may be obligated to pay an amount of the damages, interest, or penalties to the City. The City agrees that, upon receipt of any such funds, the City shall reserve an amount necessary to cover all fees and Costs as provided for in this Agreement (the 'Reserve Amount'). The City further agrees that the Reserve Amount shall be immediately deposited in a special account (the 'Fee & Cost Reserve Account'). At no time will the City be entitled to withdraw or disburse funds from the Fee & Cost Reserve Account for any purpose other than to pay Law Firm pursuant to this Agreement without the prior express written consent of Law Firm." (Boldface omitted.)

Experian argues that the contingency fee agreements violate Business and Professions Code section 17206 because "[a]ny and all civil penalties recovered in this

10

case will *not* be deposited in the City treasurer's account." To the contrary, the agreements provide that after the penalties or other payments are received by the City, an amount necessary to cover the payment to the Private Firms will be placed in a special account. Thus, the penalties will be received by the City. Further, payment to the Private Firms is for the purpose of enforcing the consumer protection laws, and therefore does not violate section 17206. Experian cites no authority that the funds must be used only for future enforcement of the consumer protection laws.

The trial court noted that even if the fee arrangement violated Business and Professions Code section 17206, it would not necessarily mandate disqualification of the Private Firms. "'Since the purpose of a disqualification order must be prophylactic, not punitive, the significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court.'" (*Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 48.)

Experian attempts to establish an effect on the outcome of the proceedings due to the release of defendant USI for what Experian describes as a "pittance" of $50,000. As noted *ante*, the terms of the contingency fee agreements retain in the City the right to make all major litigation decisions, specifically including the right to settle the case. Therefore, if USI was dismissed from the UCL litigation in exchange for a small settlement fee, that decision was made by the City, not the Private Firms; Experian fails to offer any evidence to the contrary.

The City explained its reasoning behind settling with USI in its opposition to Experian's motion to contest approval of the settlement, where it noted: (1) its claims for civil penalties would not be subject to joint liability; (2) the case against USI was weaker than the case against other defendants; (3) USI had dissolved and its owner had died; and (4) USI's insurance carrier had threatened to pull coverage.

11

The City provided a reasonable explanation for its decision to settle with USI for the stated sum, and the trial court denied Experian's motion to contest the good faith settlement. Experian cannot establish that the contingency fee agreements affected the outcome of the case.

Experian also argues that the Private Firms have violated California Rules of Professional Conduct, rule 1.5(a), by "mak[ing] an agreement for . . . [an] illegal fee." As explained *ante*, the contingency fee arrangement is permissible.

Experian has failed to establish the contingency fee agreements violate Business and Professions Code section 17206. The trial court did not err in denying the motion to disqualify the Private Firms.

DISPOSITION

The order is affirmed. Respondent to recover its costs on appeal.

ZELON, J.*

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12